[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sultaana v. Mansfield Corr. Inst.*, Slip Opinion No. 2023-Ohio-1177.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1177

THE STATE EX REL. SULTAANA *v.* MANSFIELD CORRECTIONAL INSTITUTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sultaana v. Mansfield Corr. Inst.*, Slip Opinion No. 2023-Ohio-1177.]

*Mandamus—Public records—R.C. 149.43—Writ granted in part and denied in part.*

(No. 2022-0702—Submitted January 10, 2023—Decided April 12, 2023.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This original action is brought under Ohio's Public Records Act, R.C. 149.43, by relator, Amirah Sultaana, against respondent, the Mansfield Correctional Institution ("the prison").  Sultaana seeks a writ of mandamus compelling the prison to produce records regarding three assaults committed against her son during his incarceration at the prison.  The prison provided Sultaana with incident reports related to the first and second of the three assaults and a

conduct report related to the first assault, but it redacted the names and inmate numbers of the inmates involved in the assaults. The prison asserted that all responsive records had been produced, without acknowledging that Sultaana had requested records regarding the third assault.

{¶ 2} For the reasons that follow, we grant the writ with respect to some of the requested records, grant a limited writ compelling the prison to produce additional requested records or to certify that no responsive records exist, and deny the writ with respect to the other requested records. We also deny Sultaana's motions to transfer this case to the Ohio Court of Claims, to strike the prison's merit brief, to seal or redact her own merit brief, and for statutory damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Nature of the records requests

{¶ 3} Sultaana frequently communicated with the prison warden's office from September 2021 through June 2022, to request information and records regarding her son's incarceration, with particular focus on assaults committed against him on June 9, September 15, and October 14, 2021. The following is a chronological list of Sultaana's requests and the prison's responses, the latter of which were sent to her by David Robinson, the warden's administrative assistant:

- *Request No. 1:* On September 22, 2021, Sultaana requested the "names of the inmates and any other individuals or personnel" who were "involved in the * * * assault of [her] son" on March 15, 2021, and "approximately around 3 months ago"; medical reports related to those assaults; and information regarding "how these situations were handled and how these assailant[s] were punished."

- *Request No. 2:* On October 7, Sultaana clarified that the assaults occurred on June 9 and September 15, 2021. She reiterated her initial requests and additionally requested the inmate numbers of the assailants.

2

- *Request No. 3:* On October 16, Sultaana requested the name and inmate number of an inmate who was housed with her son, copies of incident reports for all inmate assaults and fights, and incident reports for all inmate deaths caused by inmates or prison officials from February 2021 through October 16, 2021.

- *Response No. 1:* On October 22, Robinson sent Sultaana several types of incident reports, with minor redactions, including redactions of the names and inmate numbers of the assailants. He also provided a medical report and an emergency assessment, with the entire substance of those documents redacted under R.C. 5120.21(C).

- *Request No. 4:* On October 25, Sultaana told Robinson that his response was not complete, because she had received documents related to only the September assault. For the first time, she requested records regarding an assault against her son that occurred on October 14, 2021 (the third assault).

- *Response No. 2:* On November 10, Robinson sent Sultaana four redacted records related to the June 9 assault—an incident report, a medical report, a report notifying the Ohio State Highway Patrol ("OSHP") of the assault, and a conduct report for the inmate who assaulted her son. He explained that "institution information" had been redacted under R.C. 149.433 and this court's decision in *McDougald v. Greene*, 162 Ohio St.3d 250, 2020-Ohio-4268, 165 N.E.3d 261; that the medical records were redacted under R.C. 149.43(A)(1)(a) and R.C. 5120.21(C); and that "inmate information" was redacted under R.C. 5120.21(F).

- *Request No. 5:* On November 16, Sultaana told Robinson that the records provided to her regarding the June 9 assault were incomplete and that she had not received any documents regarding the October 14 assault.

- *Response No. 3:* On November 17, Robinson informed Sultaana that she had received all the records responsive to her requests that were not subject to statutory exceptions and that he considered her public-records requests closed.

- *Request No. 6:* On November 17, Sultaana objected to the closure of her public-records request, because she had not received any documents related to the October 14 assault. She also requested the full legal name of and disciplinary information about the assailant in the June assault, whom she identified as former inmate "Gage"; reiterated her request for her son's medical records regarding that assault; and requested her son's dental records.

- *Response No. 4:* On November 22, Robinson again informed Sultaana that she had received all the records responsive to her requests.

- *Request No. 7:* On June 6, 2022, Sultaana requested security-video footage of the June 9 and September 15 assaults and information regarding her son's protective-control status and "last security review."

- *Response No. 5:* On June 24, Robinson informed Sultaana that the prison had no security-video footage responsive to her request and that information regarding her son's protective-control status and last security review were exempt from disclosure under R.C. 5120.21(F).

{¶ 4} Although Sultaana requested many records from the prison, her claim here is limited to three types of records regarding the assaults against her son: (1) incident reports, (2) conduct reports and dispositions, and (3) security-video footage.

**B. Course of proceedings and evidence submitted by the parties**

{¶ 5} In June 2022, Sultaana filed a complaint for a writ of mandamus in this court. She thereafter submitted five evidentiary filings, consisting of

(1) documents the prison had provided her regarding the June 9 assault, (2) an affidavit from her son, in which he avers that he had provided Sultaana with a power of attorney over him and authorization for the disclosure of his protected health information to her, (3) a second affidavit from her son, in which he alleges that prison officials had tampered with records to conceal evidence of the June assault on him, (4) copies of Sultaana's September 22, 2021 public-records request and a grievance her son had filed against the prison's warden, and (5) two affidavits executed by Sultaana detailing her son's accounts of the assaults, an alleged plot to murder him, an alleged coverup by the prison, and a fourth assault on him.

{¶ 6} In August 2022, this court granted an alternative writ and set a schedule for the parties to submit evidence and briefs. 167 Ohio St.3d 1489, 2022-Ohio-2788, 193 N.E.3d 560.

{¶ 7} Thereafter, Sultaana submitted additional evidence, consisting primarily of her own affidavit. She avers in the affidavit that she requested public records from the prison on numerous occasions by phone, fax, email, and U.S. priority mail. She further avers that the prison informed her that it did not have the requested records, failed to "acknowledge[] specific records" she had requested, and "failed to send correct accurate legal records." Sultaana also submitted a statement of her intent to rely on the prison's evidentiary filings to establish her claim.

{¶ 8} The prison filed an affidavit from Robinson, two volumes of evidence that contain correspondence between Sultaana and the prison from September 22, 2021, through June 24, 2022, including copies of the records provided in response to Sultaana's public-records requests. The prison also submitted a telephone log summarizing most of Robinson's conversations with Sultaana about the requests.

## II. PRELIMINARY MATTERS

### A. Motion to transfer this case to the Court of Claims

{¶ 9} Sultaana has filed an unopposed motion to transfer this case to the Court of Claims. She offers no reason or support for her request.

{¶ 10} R.C. 149.43(C)(1) provides that a person allegedly subjected to a violation of the Public Records Act may seek redress by filing an action in mandamus or an action in the Court of Claims—but not both. R.C. 2743.75(C)(2) provides a mechanism by which the Court of Claims may dismiss a complaint without prejudice and direct the person allegedly aggrieved to commence a mandamus action in the court of appeals, in certain circumstances. However, no statute authorizes the transfer of a public-records mandamus case from this court to the Court of Claims. Indeed, the Court of Claims has no jurisdiction in mandamus. *See* R.C. 2731.02 (authorizing this court, the courts of appeals, or the courts of common pleas to issue writs of mandamus); R.C. 2743.03 (governing the original jurisdiction and incidental powers of the Court of Claims). Consequently, we deny Sultaana's motion to transfer.

### B. Amended emergency motion to strike respondent's brief

{¶ 11} Sultaana has filed an unopposed amended motion to strike the prison's merit brief for failure to comply with S.Ct.Prac.R. 16.02 and 16.03. She submits that the prison's brief does not include a statement of the facts or identify such a statement in its table of contents.

{¶ 12} S.Ct.Prac.R. 12.07(A) states that merit briefs in an original action shall conform to the requirements set forth in S.Ct.Prac.R. 16.01 through 16.10. S.Ct.Prac.R. 16.02(B)(3) requires a relator's merit brief to include a statement of the facts with supporting references to the record, and S.Ct.Prac.R. 16.02(B)(1) requires the brief to include a table of contents identifying the location of the statement of the facts. While a respondent's brief is generally held to the same requirements as a relator's brief, *see* S.Ct.Prac.R. 16.03(B)(1), "[a] statement of

facts may be omitted from the [respondent's] brief if the [respondent] agrees with the statement of facts given in the [relator's] merit brief," S.Ct.Prac.R. 16.03(B)(2).

{¶ 13} Although we have recognized that "a substantial disregard of the whole body of the [rules of practice] cannot be tolerated," *Drake v. Bucher*, 5 Ohio St.2d 37, 40, 213 N.E.2d 182 (1966), we have declined to strike a brief when its shortcomings have not prejudiced the opposing party's ability to file a responsive brief or hindered this court's ability to decide the case, *see State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843N.E.2d 174, ¶ 14. Here, the prison has included in its brief an introduction section setting forth the operative facts of this case with citations to the record and has identified the location of that introduction in the brief's table of contents. Because the technical shortcomings of the prison's brief have not hindered Sultaana's ability to file a reply brief or this court's ability to decide the case, we deny Sultaana's motion to strike.

### C. Emergency motion to seal or redact merit brief's statement of the facts

{¶ 14} Sultaana has filed an unopposed emergency motion to seal her own merit brief or to have its statement of the facts removed from public view. She cites no legal authority to support her motion and states only that public access to the filing will "cause additional harm" to her son while he is in prison.

{¶ 15} Documents filed in a court are presumed to be public records open to public access. Sup.R. 45(A); S.Ct.Prac.R. 3.02(A)(1). "Public access" means both direct access at the place where the record is made available and remote access through electronic means at a location other than where the record is made available. Sup.R. 44(I) through (K). On written motion or on its own order, a court may restrict public access to information in a case document or, when necessary, restrict public access to the entire document. Sup.R. 45(E)(1).

{¶ 16} A court is required to restrict public access to a document or information in it when the court finds by clear and convincing evidence that the

presumption of public access is outweighed by a higher interest, after considering (1) whether restricting access will serve public policy, (2) whether any state, federal, or common law exempts the document or information from public access, and (3) other factors, including any risk of injury to persons, individual privacy rights and interests, public safety, and the fairness of the adjudicatory process. Sup.R. 45(E)(2)(a) through (c). If a court determines that it is necessary to restrict access to a document or information in the document, Sup.R. 45(E)(3) directs the court to use the least restrictive means available and suggests methods such as redacting information, restricting only remote access, or restricting public access for a limited time.

{¶ 17} In her merit brief, Sultaana states that her son engaged in activities while in prison that caused other inmates to grow suspicious of and spread rumors about him. Sultaana says that her son's security level was then reduced and that he was assaulted before being illegally held in the Transitional Program Unit for nearly nine months. Such allegations also appear, albeit less prominently, in the materials she filed with her mandamus complaint and with her motion for statutory damages, which have been publicly available online since June 2022. They also appear at least 13 times in the prison's evidence.

{¶ 18} Public access to Sultaana's statements regarding her son's alleged activities may well pose a danger to him in prison. However, if Sultaana's account of the reasons for the three assaults involved in this case is true, information about her son's activities has already been available to the prison population through other sources. Therefore, sealing Sultaana's brief in this case or redacting information in it regarding those activities will not afford her son any protection. We therefore deny Sultaana's motion to seal or redact her brief.

8

### III. ANALYSIS OF SULTAANA'S WRIT CLAIM

### A. Legal standard

{¶ 19} R.C. 149.43(B)(1) requires a public office to make public records available on request by any person, within a reasonable time. R.C. 149.43(A)(1) provides that a "public record" is a record "kept by any public office," unless the record is specifically exempted from that definition by the statute or the release of the record is prohibited by state or federal law. If a public-records request is denied in whole or in part, the public office is required to provide the requester with an explanation for the denial, including legal authority. R.C. 149.43(B)(3).

{¶ 20} "Mandamus is [an] appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *Physicians Commt. for Responsible Medicine*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, at ¶ 6; *see also* R.C. 149.43(C)(1)(b). As the relator, Sultaana bears the burden of production to plead and prove facts showing that she requested a public record under R.C. 149.43(B)(1) and that the records custodian did not make the record available to her. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26. She bears the burden of persuasion to establish her entitlement to the writ by clear and convincing evidence. *See State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 9.

{¶ 21} We construe the Public Records Act liberally in favor of broad access and resolve any doubts in favor of disclosure of public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996). "The primary duty of a public office when it has received a public-records request is to promptly provide any responsive records within a reasonable amount of time and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial. R.C. 149.43(B)(1) and (3)." *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11.

"Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23. To satisfy that burden, the prison must prove that the requested records "fall squarely within the exception," *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

**B. The prison has failed to prove that the names and inmate numbers of the alleged assailants fall squarely within an exception to the Public Records Act**

{¶ 22} Sultaana's complaint and the letters attached thereto show that she requested at least ten types of records from the prison regarding events that occurred while her son was incarcerated at the prison. But in her merit brief, Sultaana has narrowed the scope of her requests to three types of records: (1) incident reports for the June, September, and October 2021 assaults against her son, (2) conduct reports and dispositions pertaining to all three assaults, and (3) security-video footage of the assaults.[1] *See HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 18, fn. 2 ("the omission of an argument from a party's brief may be deemed to waive that argument"), citing *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3.

{¶ 23} In her affidavit, Sultaana avers that she requested numerous public records regarding the three assaults and that she communicated with prison officials by phone, fax, and email. She states that prison officials informed her numerous times that they did not have the records she had requested and that they "never

---

1. Although Sultaana notes in her merit brief that she has requested and is still awaiting public records regarding her son's cell location during his incarceration at the prison, "STG/Weapon Committee Findings," and JPay communications, the prison's failure to fulfill those requests was not alleged in her complaint and is not properly before this court.

acknowledged specific records [she] was requesting and failed to send correct accurate legal records that [she] requested."

{¶ 24} The prison interpreted Sultaana's requests for information, including the requests for the names and inmate numbers of the inmates who assaulted her son, as requests for incident and conduct reports for the June and September 2021 assaults. In response to those requests, the prison produced one conduct report for the June assault and three types of incident reports: (1) incident reports prepared by prison staff members regarding both assaults, containing descriptions of the incidents and the actions taken, (2) OSHP notification reports conveying to the OSHP the dates, times, types, and descriptions of the incidents, and (3) an "Enterprise Information Management Incident Reporting" for the September assault that described the incident and stated that Sultaana's son had been taken to the hospital for treatment of a laceration over his eye, that conduct reports had been issued, that the inmates involved had been moved to restrictive housing "under Unit Investigation," and that the incident had been referred to the "STG/Weapons Committee." The names of the inmates who assaulted Sultaana's son were redacted from each of the reports, as were their inmate numbers, the prison's lock numbers, and the race of the assailant in one of the OSHP notification reports.[2]

{¶ 25} Sultaana argues that the prison's responses to her requests are incomplete because the identities of the inmates who assaulted her son were redacted. "A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public

---

2. The prison also redacted from the records as "institution information" details regarding whether the September assault was "STG Related" ("STG" possibly referring to a "security threat group") and the "Signal" for the June assault ("Signal" possibly being a communication code for the event, e.g., "Signal ▮ in 2-A" [redaction sic]). Sultaana has not challenged the nondisclosure of that information, and on the record before us, the redactions appear to be proper under R.C. 5120.21(D)(6) (exempting from disclosure information pertaining to groups that pose a security threat) and R.C. 149.433(A)(2)(a) (providing that security records and infrastructure records, including communication codes, are exempt from disclosure under the Public Records Act).

office to make the redaction." R.C. 149.43(B)(1). As the records custodian, the prison bears the burden of proving that the requested records fall squarely within an exception. *See Jones-Kelley*, 118 Ohio St.3d 81, 886 N.E.2d 206, at paragraph two of the syllabus.

{¶ 26} In this case, the prison asserts that the redacted information identifying the assailants is exempt from the Public Records Act as (1) confidential law-enforcement investigatory records ("CLEIR") under R.C. 149.43(A)(1)(h) and (A)(2)(a), the disclosure of which would create a high probability of disclosing the identity of an uncharged suspect, (2) records of inmates under R.C. 5120.21(A) and (F), and (3) information pertaining to groups that pose a security threat under R.C. 5120.21(D)(6).

*1. The names and inmate numbers of the inmates involved in the assaults are not exempt from disclosure under the CLEIR exception*

{¶ 27} Routine offense and incident reports, which are form-reports in which the person completing the form enters information in the spaces provided, are not exempt confidential law-enforcement work product and are normally subject to immediate release on request. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13, citing *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), paragraph five of the syllabus, *overruled on other grounds by State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598. Moreover, Ohio Adm.Code 5120-9-49(B)(2) defines "public record" to include "[c]harges and decisions in inmate disciplinary cases." And Ohio Adm.Code 5120-9-07 provides that a Department of Rehabilitation and Correction ("DRC") conduct report is the charging instrument for an alleged violation of the inmate rules of conduct. Therefore, if disciplinary charges were brought against any inmate involved in the assaults against Sultaana's son, such records and the prison's resulting disciplinary decisions are public records subject to disclosure.

{¶ 28} In *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 56-57, 741 N.E.2d 511 (2001), this court determined that an incident report initiating an investigation constituted a public record rather than an exempt CLEIR and that the records custodian had to release an unredacted version of the report despite the risk that it might disclose the identity of an uncharged suspect. Therefore, the names and inmate numbers that Sultaana seeks are not exempt as CLEIR under R.C. 149.43(A)(1)(h).

{¶ 29} This court has clarified that in *Maurer*, it "did not adopt a per se rule that all police offense-and-incident reports are subject to disclosure notwithstanding the applicability of any exemption," *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 55 (holding that police incident reports may be redacted to eliminate personal information concerning a child rape victim), *superseded by statute on other grounds as stated in State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136. Indeed, "[e]ven the information that is included in an incident-report form may, in a proper case, be redacted under a public-records exception other than the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c)." *State ex rel. Myers v. Meyers*, __ Ohio St.3d __, 2022-Ohio-1915, __ N.E.3d __, ¶ 46. Thus, the inmate names and inmate numbers could still be exempt from disclosure under R.C. 149.43(A)(2)(a) as records pertaining "to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the [information] would create a high probability of disclosure of * * * [t]he identity of a suspect who has not been charged with the offense to which the record pertains."

{¶ 30} Here, the prison has submitted as evidence the OSHP notification reports for the June and September assaults, which identify Sultaana's son as the "victim" and the inmate whose name is redacted as the "suspect." But it has not submitted any evidence to support its claim that any suspects named in those reports

remain uncharged. This bare allegation in the prison's brief is insufficient to carry the prison's burden of proving that the uncharged-suspect exception applies to the facts of this case. *See State ex rel. Natl. Broadcasting Co. v. Cleveland*, 82 Ohio App.3d 202, 208, 611 N.E.2d 838 (8th Dist.1992).

2. *The inmate names and inmate numbers are not exempt from disclosure as records of inmates under R.C. 5120.21(A) and (F)*

{¶ 31} R.C. 5120.21(A) requires DRC and its institutions to "keep * * * a record showing the name, residence, sex, age, nativity, occupation, condition, and date of entrance or commitment of every inmate." The statute also requires DRC to make, compile, or maintain other records that contain or would likely contain specific information about inmates. *See* R.C. 5120.21(B) (requiring the managing officer of an institution to make "a special report" to DRC regarding an accident, injury, or peculiar death of an inmate); R.C. 5120.21(C) (medical records); R.C. 5120.21(D)(3) (statements by inmate informants); R.C. 5120.21(D)(6) (information pertaining to groups that pose a security threat); R.C. 5120.21(D)(7) (recordings of nonprivileged conversations from monitored inmate telephones). Such records are confidential and accessible only to DRC employees, though some may be released on consent by DRC or through a court order. *See* R.C. 5120.21(A) and (D). And with the exception of certain information pertaining to inmates' medical records, R.C. 5120.21(F) exempts "records of inmates" from the definition of "public record."

{¶ 32} In *State ex rel. Mobley v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 39, 2022-Ohio-1765, 201 N.E.3d 853, an inmate had requested parts of his "inmate master file" pertaining to the charges and decisions in disciplinary proceedings against him and all kites pertaining to him. *Id.* at ¶ 2-3. DRC asserted that those records were exempt from public-records disclosure as "records of inmates" under R.C. 5120.21(F). *Mobley* at ¶ 5. This court declined to apply the R.C. 5120.21(F) exemption to records not otherwise identified in R.C. 5120.21,

14

reasoning that the term "records of inmates" as used in that statute "logically refers to the records mentioned elsewhere in R.C. 5120.21, clarifying that such records are not public records." *Mobley* at ¶ 22. Therefore, we held that R.C. 5120.21(F) did not exempt the requested parts of the inmate's master file from disclosure, because they were not records identified in R.C. 5120.21and DRC had not established that they were exempt under any other statute. *Mobley* at ¶ 12-26. *See also State ex rel. Reese v. Ohio Dept. of Rehab. & Corr. Legal Dept.*, 168 Ohio St.3d 647, 2022-Ohio-2105, 200 N.E.3d 1083, ¶ 22. Because the incident and conduct reports at issue in this case are not records that R.C. 5120.21 declares exempt from the definition of "public records," the prison cannot invoke that statute to justify its redaction of the inmate names and inmate numbers from those documents.

*3. The prison has not carried its burden of proving that the inmate names and inmate numbers at issue in this case are exempt from disclosure as confidential information pertaining to groups that pose a security threat under R.C. 5120.21(D)(6)*

{¶ 33} The prison argues that the inmate names and inmate numbers it redacted from the incident and conduct reports are exempt from disclosure under R.C. 5120.21(D)(6), which applies to "[i]nformation and data of any kind or medium pertaining to groups that pose a security threat."

{¶ 34} We have held that when the applicability of a public-records exemption is not readily apparent from the content of the record, the records custodian must provide "specific factual support that goes beyond mere conclusory statements in an affidavit to show that the record sought falls squarely within the prescribed exception." *Welsh-Huggins*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, at ¶ 50. But in *McDougald*, 162 Ohio St.3d 250, 2020-Ohio-4268, 165 N.E.3d 261, we determined that the relevance of prison shift-assignment duty rosters to the security of a prison was apparent from the face of the documents and

held that the records qualified as security records for the purposes of the Public Records Act. *Id.* at ¶ 9. We reasoned that "at least when the applicability of the exemption is obvious from the face of the documents, this court will not sacrifice those interests simply because a party should have done a better job setting forth the obvious." *Id*. at ¶ 13.

{¶ 35} In this case, the applicability of the security-threat exemption is not obvious from the records themselves, and the prison has not presented any evidence supporting its decision to redact the inmate names and inmate numbers as information pertaining to groups that pose a security threat. The only evidence in the record that might support a finding that the security-threat exemption applies is (1) Sultaana's assertion that one of her son's assailants was a member of a gang, (2) the prison's "Enterprise Information Management Incident Reporting" stating that a pair of scissors was used in one of the assaults and that the incident would be "referred to the STG/Weapons Committee," and (3) the OSHP notification report for the September assault, which stated that the assailant had "a pair of safety scissors" in his hand when he struck Sultaana's son with a closed fist. On this record, the prison has failed to carry its burden to show that the assailants' names and inmate numbers fall within any exception to disclosure under the Public Records Act.

{¶ 36} Construing the Public Records Act liberally in favor of broad access and resolving any doubts in favor of disclosure, we grant a writ of mandamus compelling the prison to produce unredacted copies of the incident reports regarding the June and September 2021 assaults and the conduct report regarding the June 2021 assault.

## C. The prison has not carried its burden of proving that no other incident or conduct reports exist that are responsive to Sultaana's requests

{¶ 37} Sultaana has presented evidence that on September 22, 2021, she requested information regarding the identities of the inmates who assaulted her son

in June and September 2021. She reiterated that request in her October 7 and 25 letters to the prison, the latter of which also requested public records related to a third assault that occurred on October 14, 2021, and any disciplinary action resulting from the three assaults.

**{¶ 38}** On October 26, Robinson acknowledged receipt of Sultaana's October 25 request—though he did not say what he thought the request entailed. He avers in his affidavit that this was "a duplicative request." On November 4, he informed Sultaana that the request had been "sent to ODRC Legal for review of documents pertaining to the request." On November 10, Robinson sent Sultaana redacted documents related to the June assault. Sultaana then informed Robinson that the records related to the June assault were incomplete and that she was still waiting for records regarding the October assault. Without ever acknowledging that Sultaana had requested records regarding the October assault, Robinson emailed Sultaana to inform her that she had "received all responsive records, subject to the exceptions in accord with R.C. 149.43" and that her public-records requests were considered closed.

**{¶ 39}** Sultaana asserts, and the evidence submitted by the prison shows, that the prison has not provided any incident or conduct reports regarding the October 2021 assault or any conduct reports regarding the September 2021 assault—even though those documents, if they exist, are public records. Sultaana further asserts that the prison has not provided any records regarding the outcome of the disciplinary charges referred to in the conduct report related to the June assault.

**{¶ 40}** In *State ex rel. McDougald v. Greene*, 160 Ohio St.3d 82, 2020-Ohio-2782, 153 N.E.3d 75, ¶ 9, we held that the relator in that case was not entitled to a writ of mandamus to compel the production of public records he had requested, because the records custodian "ha[d] provided an affidavit claiming that the records d[id] not exist" and the relator "ha[d] not done anything to rebut that affidavit so as

to clearly show that the documents exist[ed] and hence that he [had] a right to them." In this case, the only evidence that the prison has submitted to establish that no other responsive records exist is Robinson's affidavit, in which he avers, "I *informed* [Sultaana] that all responsive records had been sent to her." (Emphasis added.) But that averment only supports what Robinson told Sultaana—not that what he told her was accurate. Because Robinson has not averred that no other responsive records exist, his affidavit is insufficient to establish that fact.

{¶ 41} Sultaana, on the other hand, has submitted her son's affidavit, in which he avers that he was assaulted in his prison cell on October 14, 2021. That affidavit alone may not constitute clear and convincing evidence that incident or conduct reports exist regarding the assault, but it does constitute *some* evidence that an assault against him occurred at the prison on that date. Moreover, the evidence submitted by the prison demonstrates that when an assault occurs, the prison prepares one or more types of incident reports. In fact, Ohio Adm.Code 5120-9-24(A) requires an institution to promptly report to the director any incidents that "seriously threaten the health, safety and or security of a person" in the institution. The Administrative Code further requires that a report be sent to the OSHP when the incident "may involve the commission of a criminal offense." Ohio Adm.Code 5120-9-24(C). Therefore, if an assault against Sultaana's son occurred at the prison in October 2021, the prison should have an incident report regarding the assault.

{¶ 42} Furthermore, Ohio Adm.Code 5120-9-49(B)(2) defines "public record" to include "[c]harges and decisions in inmate disciplinary cases," and Ohio Adm.Code 5120-9-07(B) provides that a DRC conduct report is the charging instrument for an alleged violation of the inmate rules of conduct: "Any department employee or contractor * * * who has reason to believe that an inmate has violated an inmate rule (or rules) of conduct may set forth such allegation on the form designated for that purpose." Therefore, if any disciplinary charges were brought

18

against an inmate involved in the assaults on Sultaana's son, those records and the resulting disciplinary decisions are public records subject to disclosure.

{¶ 43} It is unclear from the record whether any incident reports regarding the alleged October assault, conduct reports regarding the September or October assaults, or any disciplinary decisions arising from the June, September, or October assaults exist. If such records do exist, they are public records and Sultaana is entitled to them. We therefore grant a limited writ of mandamus ordering the prison to produce those records or to certify that no such records exist. *See, e.g.*, *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337 (issuing a limited writ of mandamus under similar circumstances). Because the prison has failed to carry its burden of proving that the names and inmate numbers of the alleged assailants fall squarely within an exception to the Public Records Act, that information shall not be redacted from any records produced.

### D. Sultaana has failed to present any evidence tending to show that the prison possesses security-video footage responsive to her public-records request

{¶ 44} The evidence shows that on June 6, 2022, Sultaana requested security-video footage of the June and September 2021 assaults on her son. Sultaana asserts that under *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, the prison is required to produce security-video footage of the assaults absent a showing that the video falls within an exemption under R.C. 149.433 for records that would disclose the configuration of critical infrastructure systems or security protocols used to protect the prison.

{¶ 45} In a June 24 email, Robinson informed Sultaana that the prison has no records responsive to her security-video-footage request. Robinson avers that the prison "did not have responsive security camera footage." In contrast to the evidence supporting the existence of incident and conduct reports discussed above,

Sultaana has not presented any evidence or argument to rebut Robinson's averment or otherwise demonstrate that the requested footage exists. *See McDougald*, 160 Ohio St.3d 82, 2020-Ohio-2782, 153 N.E.3d 75, at ¶ 9. We therefore deny her request for a writ of mandamus as to the security-video footage.

## IV. STATUTORY DAMAGES

**{¶ 46}** Sultaana seeks statutory damages for the prison's failure to comply with the Public Records Act.

**{¶ 47}** R.C. 149.43(C)(2) allows a relator to recover $100 for each business day during which the respondent failed to comply with the Public Records Act, beginning on the date that the relator files a mandamus action to compel production of the public records. The damages award is capped at $1,000. The statute provides that a "requester shall be entitled to recover" statutory damages if (1) she submitted a written request "by hand delivery, electronic submission, or certified mail," (2) the request "fairly describe[d] the public record or class of public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" imposed by R.C. 149.43(B). R.C. 149.43(C)(2).

**{¶ 48}** A relator seeking statutory damages must prove the method of delivery by clear and convincing evidence. *See State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9. In the absence of proof of delivery by one of the methods authorized by R.C. 149.43(C)(2), a relator is ineligible to receive an award of statutory damages. *See Penland*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, at ¶ 16.

**{¶ 49}** The evidence demonstrates that Sultaana submitted her requests by facsimile transmission, which is not an authorized method of delivery for purposes of R.C. 149.43(C)(2). *See, e.g.*, R.C. 3737.73(D)(2)(a) (in which the legislature required that notice be provided in another context "by mail, *facsimile, or electronic*

*submission*" [emphasis added]).  Therefore, Sultaana is not entitled to statutory damages.

## V.  CONCLUSION

{¶ 50} Based on the foregoing, we deny Sultaana's motions to transfer this case to the Court of Claims, to strike respondent's merit brief, and to seal or redact her own merit brief.  We also grant Sultaana a writ of mandamus compelling the prison to produce the incident and conduct reports it has already provided to Sultaana regarding the June and September 2021 assaults on her son, without redaction of the names and inmate numbers of the inmates involved in the assaults.  In addition, we grant a limited writ of mandamus ordering the prison to produce any incident reports regarding the alleged October 2021 assault on her son, conduct reports regarding the September and October 2021 assaults, and any disciplinary decisions arising from the June, September, or October 2021 assaults *or* to certify that no such records exist.  We deny Sultaana's claim for a writ of mandamus regarding her request for security-video footage.  And we deny Sultaana's request for statutory damages.

Writ granted in part
and denied in part.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

————————

Amirah Sultaana, pro se.

Dave Yost, Attorney General, and John H. Bates, Assistant Attorney General, for respondent.

————————