[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Teagarden v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2026-Ohio-567.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-567

THE STATE EX REL. TEAGARDEN *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Teagarden v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2026-Ohio-567.]

*Mandamus—Public-records requests—Inmate not entitled to writ for public records that he has already been provided, records that he has failed to show exist and are maintained by the public office, records that he made a duplicate request for, or records that he has failed to pay the copying cost for—Inmate entitled to writ for public records he requested that public office failed to provide and that public office does not deny it maintains—Writ granted in part and denied in part—Court costs and statutory damages awarded.*

(No. 2025-0479—Submitted November 18, 2025—Decided February 24, 2026.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred but would not award statutory damages.

**Per Curiam.**

{¶ 1} Relator, Trevor Teagarden, filed this public-records mandamus action against respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), claiming that he submitted multiple public-records requests for 11 items and that ODRC still has not provided him with those items. Teagarden seeks a writ of mandamus ordering ODRC to provide him with the 11 requested items. He also seeks awards of statutory damages and court costs.

{¶ 2} For the following reasons, we grant the writ in part, ordering ODRC to provide Teagarden with item Nos. 3 and 5 through 8 once he pays any applicable copying costs for those records. But we deny the writ with respect to item Nos. 1, 2, 4, and 9 through 11. Because we grant the writ for five of the requests, we award Teagarden court costs; we also award him $5,000 in statutory damages.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts

{¶ 3} Teagarden is incarcerated at the Southeastern Correctional Institution. He was previously incarcerated at the Pickaway Correctional Institution ("PCI"). Teagarden claims that in 2024, he made multiple public-records requests for 11 "separate and distinct public records" while incarcerated at PCI and that ODRC has not provided him with any of the requested items.

{¶ 4} Teagarden submitted public-records requests for two items to the warden's office at PCI:

- Item No. 1: On September 13, 2024, Teagarden sent an electronic kite[1] requesting "[a] copy of the ODRC Master Records Retention Schedule." Marilyn Coffey, a warden's administrative assistant and public-information officer at PCI, informed Teagarden by responsive kite that a copy of the records-retention schedule was available for him to pick up from the education officer. Teagarden also made a request on September 30 for the "current ODRC Master Records Retention Schedule," alleging that the previously produced schedule was outdated. Coffey informed Teagarden that the copy he was given "is the most recent and up to date retention schedule."

- Item No. 2: On October 6, Teagarden transmitted a public-records request by electronic kite, seeking the audio recording from his hearing before the Rules Infraction Board ("RIB") in case No. PCI-24-000045. Coffey denied the request, stating that the audio recording "is not a public record." Teagarden claims that he previously submitted a public-records request for this same audio recording on February 20 in his appeal of the RIB's decision finding him guilty of a conduct violation.[2] He claims that his appeal was decided without addressing his public-records request.

{¶ 5} Teagarden transmitted public-records requests for nine other items to PCI's library, using the prison's electronic-kite system:

- Item No. 3: On July 31, 2024, Teagarden requested the library's "Table of Organization, which depicts the need for, and use of, [inmates] as library aides and legal services clerks" under ODRC Policy No. 58-LIB-02(VI)(C). The

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

2. The RIB determines the guilt of inmates who allegedly violate the inmate rules of conduct, *see* Adm.Code 5120-9-06, and it imposes penalties on inmates found guilty of a violation, *see* Adm.Code 5120-9-08 (A) and (B). An RIB decision is subject to two levels of appeal. *See id*. at (O) and (P).

library denied the request, stating that it is "prohibited in giving [inmates] certificates or any certifications while incarcerated."

- Item No. 4: On August 5, Teagarden requested "copies of each of the individual Position Descriptions signed by the [inmates] working in the library" under ODRC Policy No. 58-LIB-02(VI)(C)(3). In response, the library informed Teagarden that it would provide him with unsigned copies of the position descriptions once he paid the copying cost for those records.

- Item No. 5: On August 6, Teagarden requested "a copy of the Library Administrator's Lesson Plan" as prepared by the library administrator under ODRC Policy No. 58-LIB-02(VI)(C)(4). The library denied the request, stating that it does not provide inmates with "staff related materials."

- Item No. 6: On August 7, Teagarden requested "a copy of the PCI Library Staff Lesson Plan" as prepared by library staff under ODRC Policy No. 58-LIB-02(VI)(C)(4). The library denied the request, reiterating that "[s]taff-related materials are not given to [inmates]."

- Item No. 7: On September 13, Teagarden requested "a copy of the written library procedure for circulation of materials, access to reference services, non print material, and reader advisory services to prisoners as set forth under [ODRC Policy No.] 58-LIB-01, VI(A)(2)." The library denied the request, stating that Teagarden was "not allowed to have this."

- Item No. 8: On September 15, Teagarden requested "a copy of the library's monthly report per [ODRC Policy No. 58-LIB-01(VI)(D)(1)], for September 2024." The library denied the request, telling Teagarden that he was "not allowed to have this."

- Item No. 9: On September 29, Teagarden requested "a copy of the Library's written plan for the selection of incarcerated persons to work as library aides" as developed by the library staff under ODRC Policy No. 58-LIB-02(VI)(C)(2).

Despite Teagarden's having sent his public-records request to the library, he received a response directing him to send his request to the library. Teagarden therefore sent another public-records request to the library on September 30 asking for the same record. The library directed Teagarden to review its responses to two prior requests he made for this record.

- Item No. 10: On October 13, Teagarden requested "a copy of the library's monthly report per [ODRC Policy No. 58-LIB-01(VI)(D)(1)], for October 2024." The library notified Teagarden that he could visit the library and obtain a copy of the requested record upon paying the copying cost.

- Item No. 11: On October 29, Teagarden requested a copy of a library sign displaying a rule limiting the amount of time that inmates may meet with certain library staff members each week. The library informed Teagarden that no such sign exists and that no such rule was in place. Teagarden claims that he followed up with the library on November 8, making both a verbal and a handwritten request for a copy of the sign, but that he never received it.

*B. Procedural history*

{¶ 6} On April 3, 2025, Teagarden filed a petition for a writ of mandamus, claiming that ODRC had failed to comply with its duties under Ohio's Public Records Act, R.C. 149.43, [3] by not providing him with copies of the 11 items he had requested or properly explaining its reasons for denying his requests. Teagarden attached to his petition copies of each public-records request; a copy of his appeal of the RIB's decision and a cash slip showing payment for postage to mail the appeal; a copy of ODRC Policy Nos. 58-LIB-01 and 58-LIB-02, which pertain to ODRC's library operations; a copy of ODRC Policy No. 56-DSC-02,

---

3. The General Assembly has recently amended R.C. 149.43, most notably in 2024 Sub.H.B. No. 265 (effective Apr. 9, 2025). This opinion applies the versions of the statute enacted in 2023 Sub.H.B. No. 33 (effective Oct. 3, 2023) and 2024 Sub.S.B. No. 29 (effective Oct. 24, 2024); those versions are substantially similar.

which pertains to the RIB-hearing process; and a copy of ODRC Policy No. 07-ORD-02, which pertains to ODRC's handling of public-records requests.

{¶ 7} ODRC filed an answer, and we issued an alternative writ, setting the schedule for the presentation of evidence and filing of briefs, 2025-Ohio-2118. Both parties submitted evidence and filed merit briefs. Teagarden filed a reply brief.

{¶ 8} Teagarden's evidence consists of a second affidavit by him, along with copies of affidavits by PCI's librarian and two kites containing public-records requests that he sent to PCI's library in August 2023; those kites pertain to another public-records case that he has filed in this court and are not at issue here.

{¶ 9} ODRC's evidence consists of affidavits from Sarah Pierce, staff counsel for ODRC, and Coffey; copies of Teagarden's public-records requests that are at issue in this case; and a copy of the records-retention schedule that ODRC gave to Teagarden. ODRC's evidence also contains a public-records request that Teagarden sent to PCI's library on August 2, 2024, asking for "a copy of the Library's Written Plan for Selection of [inmates] to Work as Library Aides," and the library's response to the August 2 request, directing Teagarden to visit the library to obtain a copy of the written plan. The written plan that Teagarden requested on August 2 is the same written plan that he requested on September 29 (item No. 9).

## II. ANALYSIS

{¶ 10} A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Barker v. Muskingum Cty. Prosecutor's Office*, 2025-Ohio-5293, ¶ 12. To obtain the requested writ, Teagarden must prove by clear and convincing evidence that he has a clear legal right to the records requested and that ODRC has a corresponding clear legal duty to provide him with those records. *State ex rel. Ware v. Sheldon*, 2025-Ohio-1768, ¶ 10. Accordingly, Teagarden bears the burden to plead and prove facts showing that he requested

public records under R.C. 149.43(B)(1) and that ODRC failed to make the requested records available. *State ex rel. Ware v. Beggs*, 2024-Ohio-611, ¶ 11.

### A. Teagarden's public-records requests to PCI's warden's office

#### 1. Item No. 1

{¶ 11} Teagarden asserts that ODRC failed to provide him with a copy of its current records-retention schedule (item No. 1)—a record that he says ODRC must maintain under R.C. 149.43(B)(2). ODRC contends that it provided Teagarden with a copy of its current records-retention schedule, and it cites Coffey's attestation in her affidavit that Teagarden received the "most current copy of the Records Retention Schedule" on September 18 when he picked up the copy made available to him.

{¶ 12} "A public office may establish by affidavit that all existing public records have been provided." *State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623, ¶ 15. The public-records requester may rebut the public office's attestations made in an affidavit "by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist." *Id*. Teagarden has not presented any such evidence here, and he concedes in his merit brief that he cannot confirm that he did not receive the current schedule used by ODRC.

{¶ 13} Accordingly, we conclude that the evidence shows that ODRC provided Teagarden with its current records-retention schedule in response to his request for item No. 1 and that in so doing, complied with its obligations under the Public Records Act. We therefore deny Teagarden's request for a writ for item No. 1.

#### 2. Item No. 2

{¶ 14} Teagarden next asserts that he made two public-records requests for the audio recording from his RIB hearing (item No. 2): the first on February 20 in his appeal of the RIB's decision and the second on October 6 by electronic kite sent to the warden's office. Teagarden argues that Adm.Code 5120-9-08 requires that

RIB hearings be recorded, *see* Adm.Code 5120-9-08(D), and that ODRC's records-retention schedule shows that ODRC maintains those recordings for three years.

{¶ 15} ODRC counters that Teagarden is not entitled to the requested audio recording, because no such recording exists. Pierce attests in her affidavit that "Teagarden was found not guilty of the original alleged [conduct] violation" when the RIB's decision was overturned on appeal and that once an inmate is found not guilty of an alleged conduct violation, "[O]DRC no longer maintains an active record of the alleged violation or subsequent hearing process." Accordingly, ODRC contends in its merit brief that once Teagarden received notice of that decision on appeal, ODRC no longer maintained a record of the RIB hearing and therefore "the audio records in question in this matter would no longer exist."

{¶ 16} Indeed, a public office has no duty to produce records that do not exist, and a public office may prove by averments in an affidavit that it does not maintain the requested records. *See State ex rel. Scott v. Toledo Corr. Inst.*, 2024-Ohio-2694, ¶ 12. Relatedly, a public office has no duty under the Public Records Act to create records that do not exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 26.

{¶ 17} To rebut Pierce's averments, Teagarden argues that ODRC's records-retention schedule shows that it maintains RIB-hearing records for three years. But we recently rejected a similar argument, concluding that "'the existence of a particular records schedule at a public office does not necessarily mean that the public office has records encompassed by that schedule,'" *State ex rel. Mobley v. Witt*, 2025-Ohio-868, ¶ 13, quoting *State ex rel. Mobley v. Bates*, 2024-Ohio-2827, ¶ 9. Therefore, Teagarden's reliance on the records-retention schedule alone fails to clearly and convincingly rebut Pierce's averments that ODRC does not maintain the requested audio recording. *See State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13 (a public-records requester must rebut a public

8

office's averment that no responsive records exist by clear and convincing evidence).

{¶ 18} Because Teagarden has failed to clearly and convincingly show that the audio recording exists, we deny his request for a writ for item No. 2.

*B. Teagarden's public-records requests to PCI's library*

{¶ 19} Teagarden maintains that ODRC failed to comply with its obligations under the Public Records Act by not providing him with copies of the nine items that he requested from PCI's library or by not properly explaining the reasons for denying his requests for those items. We address each of Teagarden's public-records requests to the library in turn and do so out of order for ease of analysis.

*1. Item Nos. 3 and 5 through 8*

{¶ 20} The library denied Teagarden's public-records requests for item Nos. 3 and 5 through 8 by informing Teagarden that he is not allowed to have the requested items—namely, the library's table of organization (item No. 3), the library administrator's lesson plan (item No. 5), the library staff's lesson plan (item No. 6), the library's written procedures for certain services (item No. 7), and the library's monthly report for September 2024 (item No. 8). Item Nos. 3, 5, and 6 are records that the library would prepare and maintain under ODRC Policy No. 58-LIB-02. *See* ODRC Policy No. 58-LIB-02 (effective Mar. 1, 2021). Item Nos. 7 and 8 are records that the library would prepare and maintain under ODRC Policy No. 58-LIB-01. *See* ODRC Policy No. 58-LIB-01 (effective Dec. 17, 2023).

{¶ 21} Notably, when responding to Teagarden's public-records requests for these items, the library did not tell Teagarden that it does not maintain the items, and ODRC has not presented any argument to that effect in its merit brief, which leads us to conclude that the requested records are maintained by PCI's library.

{¶ 22} Because ODRC does not contest that item Nos. 3 and 5 through 8 are public records maintained by PCI's library, we grant the writ as to these items

and in doing so, we need not address Teagarden's additional argument that ODRC did not comply with R.C. 149.43(B)(3) in denying his public-records requests for these items.

### 2. Item No. 9

{¶ 23} In his request for item No. 9, made on September 29, Teagarden asked for a copy of the library's written plan for the selection of inmates to work as library aides. ODRC's evidence shows that Teagarden previously requested this item on August 2 and that the library instructed Teagarden at that time to visit the library to obtain it. A requester's reiteration of a prior public-records request does not constitute a new, separate request for the purpose of R.C. 149.43, and a public office has no duty to respond to a duplicate request for the same record. *See State ex rel. Laborers Internatl. Union of N. Am., Local Union No. 500 v. Summerville*, 2009-Ohio-4090, ¶ 6. Because Teagarden made a prior public-records request for item No. 9, the library had no duty to respond to the duplicate request. Therefore, we deny the writ for item No. 9.

### 3. Item No. 10

{¶ 24} In his public-records request for item No. 10, Teagarden asked for a copy of the library's monthly report for October 2024. The library informed Teagarden that he could visit the library and obtain a copy of the monthly report upon paying the copying cost.

{¶ 25} "R.C. 149.43 does not require a public-records custodian to provide copies of records free of charge; instead, the Public Records Act requires only that copies of public records be made available at cost." *State ex rel. Call v. Fragale*, 2004-Ohio-6589, ¶ 6, citing R.C. 149.43(B)(1). We have interpreted "at cost" to mean "the actual cost of making copies [of the public record], 'unless the cost is otherwise set by statute.'" (Bracketed text added.) *State ex rel. Slagle v. Rogers*, 2004-Ohio-4354, ¶ 6, quoting *State ex rel. Warren Newspapers v. Hutson*, 1994-Ohio-5, ¶ 25. Because Teagarden has not presented any evidence showing that he

paid the copying cost for the requested monthly report, we deny the writ for item No. 10.

### 4. Item No. 4

{¶ 26} In his public-records request for item No. 4, Teagarden asked for "copies of each of the individual Position Descriptions signed by the [inmates] working in the library" under ODRC Policy No. 58-LIB-02(VI)(C)(3). The library informed Teagarden that it would provide him with unsigned copies of the position descriptions once he paid the copying cost for those records. Teagarden argues that ODRC Policy No. 58-LIB-02(VI)(C)(3) requires that the library maintain *signed* position descriptions. However, the policy does not state that the library must maintain signed copies of the position descriptions. Instead, that policy states that "[l]ibrary aides and legal services clerks shall sign and receive a copy of the position description during the library orientation training," ODRC Policy No. 58-LIB-02(VI)(C)(3), which suggests that it is the inmate serving as the aide or clerk who maintains the signed copy.

{¶ 27} Furthermore, the library informed Teagarden that it would provide him with *unsigned* copies of the requested position descriptions once he paid the copying cost for those records, and Teagarden has not presented any evidence showing that he has paid that cost. *See Call* at ¶ 6. Because Teagarden does not show entitlement to item No. 4, we deny the writ for that item.

### 5. Item No. 11

{¶ 28} In his public-records request for item No. 11, Teagarden asked for a library sign that, he contends, displays a rule limiting the amount of time each week that inmates may meet with certain library staff members. The library informed Teagarden that no such sign or rule exists.

{¶ 29} Teagarden has the burden to show by clear and convincing evidence that the sign displaying the purported rule exists and is maintained by the library. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8. "Clear and convincing

evidence" is a measure or degree of proof that is more than a preponderance of the evidence and will produce in the trier of fact's mind a firm belief as to the fact sought to be established, but it does not go so far as to reach the burden required in criminal cases of proof beyond a reasonable doubt. *State ex rel. Griffin v. Doe*, 2021-Ohio-3626, ¶ 5.

{¶ 30} Teagarden's only evidence in support of the sign's existence is his second affidavit in which he attests that the librarian "posted a new rule titled: 'Times for Numbers' which severely limits prisoners' access to interact with her." Teagarden further attests that he included in his evidentiary submission "true copies of other signs" denoted as "Exhibits 'MM' and 'NN'" that were posted in PCI's library and "are similar in form" to the sign at issue here. But Teagarden's evidence does not include copies of the two exhibits he identifies in his second affidavit. And Teagarden's averments largely reiterate what he stated in his public-records request for the library sign.

{¶ 31} Teagarden's averments alone do not clearly and convincingly show that item No. 11 exists and is maintained by the library. *See State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 41 (concluding that although a submitted affidavit alone may not constitute clear and convincing evidence, it does constitute some evidence when viewed alongside other evidence). Thus, we deny the writ for item No. 11.

### C. Statutory damages

{¶ 32} Teagarden requests an award of statutory damages for each public-records request that he transmitted to ODRC. A requester who transmits a written public-records request "by hand delivery, electronic submission, or certified mail" may recover statutory damages if the request "fairly describes the public record or class of public records" requested and a court determines that the public-records custodian failed to comply with an obligation set forth in R.C. 149.43(B), R.C. 149.43(C)(2). Statutory damages accrue at a rate of $100 for each business day that

the public-records custodian fails to meet one of the custodian's obligations under R.C. 149.43(B), starting on the day the requester files a mandamus action, up to a maximum of $1,000. *Id.*

{¶ 33} For the reasons discussed above, Teagarden has not shown that ODRC failed to comply with an obligation under R.C. 149.43(B) with respect to his requests for item Nos. 1, 2, 4, and 9 through 11. Therefore, Teagarden is not entitled to statutory damages related to those requests. *See State ex rel. Ames v. Big Walnut Local School Dist. Bd. of Edn.*, 2025-Ohio-2493, ¶ 14.

{¶ 34} Even though ODRC has proved that it did not maintain item No. 2 (the audio recording from Teagarden's RIB hearing) when Teagarden made his public-records request to the warden's office, ODRC has not proved that no such recording existed when Teagarden first requested it in his February 20 appeal of the RIB's decision. However, even if Teagarden made a proper public-records request in his RIB appeal, he is not entitled to an award of statutory damages in relation to that request, because the evidence does not show that he transmitted his appeal by a method that allows for statutory damages.

{¶ 35} Specifically, Teagarden argues that he sent his RIB appeal by certified mail, but the evidence shows that he paid the cost associated with mailing his appeal using the prison-mail system. Teagarden has the burden of proving by clear and convincing evidence that he delivered his February 20 request by certified mail, and he falls short of meeting that burden. *See State ex rel. Ware v. Galonski*, 2024-Ohio-1064, ¶ 18.

{¶ 36} With respect to item Nos. 3 and 5 through 8, however, Teagarden submitted his public-records requests for those items using ODRC's electronic-kite system. An electronic kite constitutes an electronic transmission for purposes of R.C. 149.43(C)(2). *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 11.

{¶ 37} Although ODRC acknowledges that Teagarden transmitted his public-records requests for item Nos. 3 and 5 through 8 to PCI's library using separate kites sent on different days, it argues in its merit brief that these requests should be considered a single request for the purpose of calculating statutory damages because the requests were all made "within a short period of time to the same 'public office,' i.e., the library" and they "generally pertain to the same subject matter, i.e., institutional library procedures and processes." ODRC cites *State ex rel. Clark v. Dept. of Rehab. & Corr*., 2025-Ohio-895, and *State ex rel. Ware v. Parikh*, 2023-Ohio-2536, in support of its argument. However, neither case supports ODRC's argument.

{¶ 38} In *Clark*, we concluded that the public-records request of an inmate who asked for two different records from ODRC constituted a single public-records request for the purpose of calculating statutory damages because the inmate "requested [those records] as part of the same kite and they concern[ed] the same general subject matter." *Clark* at ¶ 18.

{¶ 39} In *Parikh*, we deemed eight requests for public records sent in separate envelopes to be a single public-records request for the purpose of calculating statutory damages because "the envelopes were sent on the same day, were submitted to the same office, and concerned the same general subject matter." *Parikh* at ¶ 31.

{¶ 40} Teagarden sent his requests for item Nos. 3 and 5 through 8 to PCI's library, asking for different types of library records, but these five requests were transmitted to the library in separate kites on different days. Therefore, the facts here are different from those in *Clark* and *Parikh*. We thus conclude that Teagarden's requests for item Nos. 3 and 5 through 8 constitute separate public-records requests. And because ODRC never provided Teagarden with the requested records to which he is entitled, we award him the maximum amount of

$1,000 in damages for each request—for a total of $5,000 in statutory damages. *See* R.C. 149.43(C)(2).

### D.  Court costs

**{¶ 41}** Teagarden did not file an affidavit of indigency, and he requests an award of court costs.  An award of court costs is mandatory when we order a public office to comply with R.C. 149.43(B).  R.C. 149.43(C)(3)(a)(i); *see also Clark*, 2024-Ohio-770, at ¶ 19.  Because we grant Teagarden's claim for a writ of mandamus pertaining to five of his public-records requests, we award Teagarden court costs under R.C. 149.43(C)(3)(a)(i).

### III.  CONCLUSION

**{¶ 42}** Teagarden is entitled to some, but not all, of the public records he requested.  We grant Teagarden's request for a writ of mandamus as to item Nos. 3 and 5 through 8.  And we order ODRC to provide Teagarden with copies of those five items once he pays any applicable copying costs for those records.  But we deny the writ as to his requests for item Nos. 1, 2, 4, and 9 through 11.  We award Teagarden court costs and $5,000 in statutory damages.

Writ granted in part

and denied in part.

————————————

Eric J. Allen, for relator.

Dave Yost, Attorney General, and Salvatore P. Messina and D. Chadd McKitrick, Assistant Attorneys General, for respondent.

————————————