[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ealom v. Booth*, Slip Opinion No. 2025-Ohio-1025.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1025

THE STATE EX REL. EALOM *v.* BOOTH.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ealom v. Booth*, Slip Opinion No. 2025-Ohio-1025.]

*Mandamus—Public Records Act—R.C. 149.43—Public-records requester not entitled to writ, because he failed to present evidence to rebut respondent's averment in affidavit that no responsive records exist for the first two public-records requests and because requester already has copies of records containing the information he asked for in his third public-records request—Writ and requests for statutory damages, court costs, and attorney fees denied.*

(No. 2024-0688—Submitted January 7, 2025—Decided March 27, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., concurred but did not join Part

II(A)(2) of the per curiam opinion. KENNEDY, C.J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Anthony Ealom, an inmate currently housed at the Allen-Oakwood Correctional Institution and formerly housed at the Trumbull Correctional Institution ("the prison"), filed this original action seeking a writ of mandamus against respondent, Glenn Booth, the former warden's assistant and public-information officer at the prison, for allegedly failing to produce records in response to his public-records requests. He also seeks awards of statutory damages, court costs, and attorney fees. We deny the requests for a writ of mandamus and for statutory damages, court costs, and attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts

{¶ 2} On May 31, 2021, the prison experienced a flooding incident. Corrections Officer Brian I. Skelton completed an incident report that day, noting that around 6:40 a.m., the kitchen and laundry-room drains began to flood and cell Nos. 130 through 135 were "flooding water out of their toilets." Officer Skelton indicated that while maintenance workers attempted to fix the issue, additional cells in the 15 East block, specifically cell Nos. 102 through 104 and Nos. 120 through 135, began to flood. He noted that a "list [was] compiled regarding inmates potentially moving" out of the cell block. Officer Skelton also reported that the inmates vacated the 15 East cell block and that "[a]fter count cleared at 11:30am the block was back to normal operations."

{¶ 3} Corrections Officer Austin C. Price also completed an incident report. He noted: "[T]he drains in the laundry room, in front of the kitchen, and [in] cell 131, and the toilet in cell 135 began to spew out water flooding half of the 15 East day room. There was fecal matter in the water which was all over the dayroom

floor and in cells 130-135." Officer Price further noted that a lieutenant "moved the inmates from cells 130-135 out of the unit" and that a "bio cleaning team reported to the block and began cleanup." Officer Price indicated that the inmates in cell Nos. 130 through 135 were going to be moved to another cell block.

{¶ 4} Two and a half years later, Ealom sent electronic kites—a type of written communication between an inmate and a member of prison staff, *State ex rel. Martin v. Greene*, 2019-Ohio-1827, ¶ 3, fn. 1—to Booth requesting the following records related to the May 31, 2021 incident: (1) "hazardous and infectious waste documentation (SS-0027) that document[s] the disposal of the hazard[ous] waste . . . documented in the incident report filed on May 31, 2021 by Brian I. Skelton," (2) "all the maintenance log (SS-0010) concerning the flood on the day of May 31, 2021," and (3) records regarding "any and all the moves submitted on the date of May 31, 2021 due to a[n] incident report filed for the flood that happened."

{¶ 5} In response to Ealom's first request, Booth stated in a kite, "There [are] no responsive records for infections [sic] waste documentation (SS-0027) for the allegation you have for 15 East on the morning of May 31, 2021 from the times of 12:00 am to 12:00 pm as a result of the incident report that was written by Officer Brian Skelton."

{¶ 6} Regarding Ealom's second request, Booth replied by kite, "In response to your request for all the maintenance log (SS-0010) concerning the flood on the day of May 31, 2021 from 12am to 12pm, be advised that there [are] no responsive records after checking with the maintenance supervisor." Booth also informed Ealom that according to the maintenance supervisor, maintenance work for the flooding incident was performed solely based on the incident reports.

{¶ 7} With respect to Ealom's third request, Booth stated in a responsive kite, "This record request is not attainable and falls under the public records

exemption [R.C.] 5120.21(F) in accordance with [Ohio Department of Rehabilitation and Correction ("ODRC")] policy 07-ORD-02."

### B. Procedural history

{¶ 8} On May 13, 2024, Ealom filed a complaint for a writ of mandamus, seeking "remedy in the form of . . . copies of the public record[s] requested," an award of $3,000 in statutory damages, and an award of court costs. In his merit brief, he also requests an award of attorney fees.

{¶ 9} Booth filed an answer to the complaint in which he repeated the reasons originally given to Ealom for not providing Ealom with the requested records. We granted an alternative writ, ordering the parties to file evidence and submit briefs. 2024-Ohio-2781.

{¶ 10} In his merit brief, Ealom argues that because Booth informed him that no responsive records exist regarding his request for the maintenance log of the work completed on May 31, 2021, and his request for related hazardous- and infectious-waste records, the prison is in "violation of the ODRC Retention Schedule." Ealom claims that the prison has a duty to keep a record of such documents and that its failure to do so entitles him to statutory damages.

{¶ 11} Regarding his request for records pertaining to "any and all the moves" of inmates due to the May 2021 flooding incident, Ealom states that Booth never advised him that his request was "not specific" or was "ambiguous." Ealom additionally asserts that Booth "did not provide a valid exemption to [explain] why the records were not provided." Ealom argues that in his request for records pertaining to "the moves" of inmates on May 31, 2021, he "did not request any personal records concerning other inmates." He instead contends that he requested records pertaining to "cell moves" and that "if any other personal information of inmates" appears on the requested records, Booth could have redacted that information.

4

{¶ 12} Booth asserts that he properly responded to Ealom's requests for the maintenance log and the hazardous- and infectious-waste documentation by informing Ealom that no such records exist. Booth attests in an affidavit that upon receiving Ealom's request for the maintenance log, he spoke with the maintenance supervisor, who informed him that maintenance personnel "work[ed] off of incident reports" when responding to the flooding incident. Booth attests that he then advised Ealom that no responsive records exist regarding his request for the maintenance log. Booth further avers that he informed Ealom that no responsive records exist regarding Ealom's request for hazardous- and infectious-waste documentation related to the flooding incident.

{¶ 13} Booth argues that he did not have a duty to provide Ealom with any record that contains "any and all the moves" of inmates due to the flooding incident on May 31, 2021. He contends that Ealom's request for such records falls within the "records of inmates" exemption under R.C. 5120.21(F). And he asserts that R.C. 5120.21(A) protects from public disclosure inmate records that contain information about an inmate's residence and transfers between institutions.

{¶ 14} Booth further contends that Ealom is not entitled to statutory damages. He argues that he did not fail to comply with an obligation under R.C. 149.43(B), because he informed Ealom that records responsive to his requests for the hazardous- and infectious-waste documentation and the maintenance log do not exist. With respect to Ealom's request for records pertaining to "any and all the moves" of inmates on May 31, 2021, Booth argues that since those records are exempt from public disclosure under R.C. 5120.21(F), Ealom is not entitled to an award of statutory damages pertaining to that request.

## II. LEGAL ANALYSIS

### A. *Writ of mandamus*

{¶ 15} A person allegedly aggrieved by the "failure of a public office or the person responsible for public records to comply with an obligation" under R.C. 149.43(B), may "[c]ommence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)], that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under [R.C. 149.43(C)(2)]." R.C. 149.43(C)(1)(b).

{¶ 16} Further, R.C. 149.43(B)(1) obligates "a public office or person responsible for public records," upon request by any person, to "make copies of the requested public record available to the requester at cost and within a reasonable period of time." This provision "establishes a clear legal right [for any person] to request that identifiable public records be made available for inspection or copying" and generally imposes on the public office or person responsible for public records "a corresponding clear legal duty to make a requested public record available for inspection or copying unless it falls squarely within a specific statutory exemption." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 25. "If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3).

{¶ 17} To be entitled to a writ of mandamus, a public-records requester must present clear and convincing evidence that (1) the requester has a clear legal right to compel the public office or the person responsible for the public record to allow the requester to inspect or copy the public record and (2) the public office or the person responsible for the public record has a clear legal duty to allow the requester to inspect or copy the public record. *See* R.C. 149.43(C)(1)(b); *Welsh-*

*Huggins* at ¶ 24, citing *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. The public-records requester is not required to establish the absence of an adequate remedy in the ordinary course of the law. *E.g.*, *id.*; *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753, ¶ 25.

### *1. Requests for records that do not exist*

{¶ 18} A public office or person responsible for public records "may establish by affidavit that all existing public records have been provided." *State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623, ¶ 15. The requester may rebut this affidavit by submitting clear and convincing evidence indicating that responsive records exist. *See id.*; *State ex rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 14 (a public-records requester "must show by clear and convincing evidence that he requested a record that exists" and is maintained by the public office or person from whom it was requested).

{¶ 19} Booth submitted an affidavit in this action attesting that no records exist that are responsive to Ealom's requests for a maintenance log and for hazardous- and infectious-waste documentation pertaining to the May 2021 flooding incident. Ealom has not submitted any evidence to dispute Booth's affidavit in this regard. Thus, Ealom is not entitled to a writ of mandamus as to those requests. *See State ex rel. McDougald v. Greene*, 2020-Ohio-2782, ¶ 9 (the relator was not entitled to writ of mandamus compelling the production of public records he had requested, because the person responsible for public records "provided an affidavit claiming that the records do not exist" and the relator "ha[d] not done anything to rebut that affidavit so as to clearly show that the documents exist and hence that he [had] a right to them"); *State ex rel. Harris v. Pureval*, 2018-Ohio-4718, ¶ 17 ("because no document exists, [the relator] is not entitled to mandamus relief"). Therefore, we deny the writ as to Ealom's requests for a

maintenance log and for hazardous- and infectious-waste documentation regarding the May 31, 2021 flooding incident.

### 2. "Records of inmates" exemption

{¶ 20} Booth argues in his merit brief that Ealom's request for records pertaining to inmates' cell moves as a result of the May 31, 2021 flooding incident constitutes a request for information that is exempt from public disclosure under R.C. 5120.21(F). Booth further argues that Ealom "was attempting to get other inmate records of where they were residing in the institution or information on other inmates' transfers" and that under R.C. 5120.21(A), that information is not subject to public disclosure.

{¶ 21} Ealom contends that the R.C. 5120.21(F) exemption does not apply to his request for information pertaining to inmates' cell moves on May 31, 2021, because he "did not request any personal records concerning other inmates." He contends that he requested information pertaining to inmates' "cell moves" and that "any other personal information of inmates committed to the department of rehabilitation and correction [that] would have been included [in those records] could have been redacted." Ealom states that Booth "never asked for any clarity and/or stated that this record [request] was ambiguous or unclear."

{¶ 22} We strictly construe the disclosure exemptions contained in the Public Records Act, R.C. 149.43, and the public office or person responsible for public records has the burden to establish the applicability of an exemption. *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23. To satisfy that burden, the public office or person responsible for public records must prove that the requested records fall squarely within the exemption. *See State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus; *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 21.

{¶ 23} R.C. 5120.21(F) specifically exempts "records of inmates" from the definition of "public record." *See Sultaana* at ¶ 31. And R.C. 5120.21(A) requires ODRC to "keep . . . a record showing the name, residence, sex, age, nativity, occupation, condition, and date of entrance or commitment of every inmate," along with, among other things, "all transfers from one institution to another." This record is not generally considered a public record. *See* R.C. 5120.21(A) (stating that subject to limited exceptions, this record is "accessible only to [ODRC] employees"); R.C. 5120.21(F).

{¶ 24} Booth interpreted Ealom's request for "any and all the moves" of inmates on May 31, 2021 as a request for inmate records protected from public disclosure under R.C. 5120.21(F) and denied Ealom's request on that basis. Ealom has since clarified in his merit brief that his request is for records pertaining to "cell moves" and that he is not asking for "any personal records concerning other inmates."

{¶ 25} Ealom has copies of two incident reports that contain information regarding inmates' "cell moves" on May 31, 2021. Both Ealom and Booth submitted those incident reports as evidence. The two incident reports indicate that inmates were moved from the cells impacted by flooding to a different location in the prison. In the "Action Taken" section of Officer Price's report, he wrote, "Looks like at this time [that] inmates in cells 130-135 are going to be moved to 12W for safety and sanitation reasons." And Officer Skelton noted in the "Action Taken" section of his report that a "list [was] compiled regarding inmates potentially moving." Ealom, however, has not indicated that his request for records pertaining to "any and all the moves" of inmates on May 31, 2021, was a request for that list. Moreover, the two incident reports that both Ealom and Booth submitted as evidence contain information regarding Ealom's clarified request for records pertaining to inmates' "cell moves" on May 31, 2021. Ealom therefore already has copies of records that contain the information he requested from Booth.

If he is requesting something more specific, he should submit a new records request. *See State ex rel. Howson v. Edmonson*, 2024-Ohio-4619, ¶ 23 ("The person wishing to inspect or obtain copies of records has the responsibility to identify with reasonable clarity what records the person is seeking."). Therefore, we deny the writ as to Ealom's request for records pertaining to inmates' "cell moves" on May 31, 2021.

**{¶ 26}** Because we decide this writ request based on the foregoing reason, we need not consider Booth's argument that Ealom's request for records pertaining to inmates' "cell moves" on May 31, 2021, falls within the R.C. 5120.21(A) exemption as a record of inmates' residences or "transfers from one institution to another."

### B. *Statutory damages, court costs, and attorney fees*

**{¶ 27}** Ealom also requests awards of statutory damages, court costs, and attorney fees.

**{¶ 28}** R.C. 149.43(C)(2) entitles a public-records requester to an award of statutory damages if the requester (1) transmitted a written public-records request by hand delivery, electronic submission, or certified mail to "the public office or person responsible for the requested public records," (2) fairly described the records sought, and (3) establishes that "the public office or the person responsible for public records failed to comply with an obligation" under R.C. 149.43(B). *See State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 6. The requester bears the burden to prove by clear and convincing evidence that he is entitled to statutory damages. *Id.* "Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15, citing R.C. 149.43(C)(2).

10

{¶ 29} As discussed above, Booth did not fail to comply with an obligation under R.C. 149.43(B) in responding to Ealom's public-records requests. Accordingly, Ealom is not entitled to an award of statutory damages under R.C. 149.43(C)(2). *See McDougald*, 2020-Ohio-2782, at ¶ 10.

{¶ 30} Ealom also argues that he is entitled to an award of statutory damages based on Booth's alleged failure to comply with ODRC's records-retention schedule. But nothing in R.C. 149.43 authorizes a relator to receive statutory damages for a respondent's failure to comply with a records-retention schedule. Thus, Ealom is not entitled to a statutory-damages award on this basis.

{¶ 31} Ealom also requests an award of court costs under R.C. 149.43(C)(3)(a)(i). That provision authorizes an award of court costs if the court orders the public office or the person responsible for the requested public record to comply with R.C. 149.43(B). Here, we are not ordering Booth to comply with R.C. 149.43(B), and Ealom has not argued that any other statutory provision allows us to award him court costs in this action. Thus, we deny Ealom's request for an award of court costs. *See McDougald* at ¶ 11.

{¶ 32} In his merit brief, Ealom asks us to award reasonable attorney fees. However, because Ealom did not include this request in his complaint, we do not consider it. *See* S.Ct.Prac.R. 12.02(B)(3) ("All relief sought [in an original action] . . . shall be set forth in the complaint."); *see also State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, 2024-Ohio-103, ¶ 31.

### III. CONCLUSION

{¶ 33} Because Ealom has not shown that Booth failed to comply with his obligations under the Public Records Act, we deny Ealom's request for a writ of mandamus. We also deny his requests for awards of statutory damages, court costs, and attorney fees.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 34} I concur in the majority's judgment denying relator, Anthony Ealom, a writ of mandamus compelling respondent, Glenn Booth, the former warden's assistant and public-information officer at Trumbull Correctional Institution, to produce copies of the hazardous- and infectious-waste documentation and maintenance logs for a flooding event that occurred at the prison on May 31, 2021. I also agree with the majority's judgment denying Ealom an award of statutory damages for those two public-records requests and denying him an award of attorney's fees for all three of his public-records requests.

{¶ 35} I write separately, however, because I disagree with the majority's judgment denying Ealom a writ of mandamus with respect to his third public-records request, in which he sought records for "any and all the moves submitted on the date of May 31, 2021[,] due to a[n] incident report filed for the flood that happened on the day of May 31, 2021." The fact that Ealom "already has copies of records that contain the information he requested," majority opinion, ¶ 25, does not render his writ claim moot. And the "records of inmates" exception set forth in R.C. 5120.21(F) does not apply here. There is no valid basis for this court to deny Ealom a writ of mandamus as to his third public-records request.

{¶ 36} Consequently, I would (1) grant a limited writ ordering the production of records responsive to Ealom's public-records request for "any and all the moves" of inmates as a result of the May 31, 2021, flooding event, (2) award statutory damages in the amount of $1,000 for Booth's failure to produce those records, and (3) award court costs. *See* R.C. 149.43(C)(2) and (C)(3). Therefore, I concur in part and dissent in part.

{¶ 37} The majority asserts that Ealom's request for records of inmate "moves" should be denied because he already has copies of the incident reports for the flooding event. *See* majority opinion at ¶ 25. But that is not a permissible

ground for denying a public-records request under the Public Records Act, R.C. 149.43. Regardless of whether a person already possesses the record he or she is requesting, the Public Records Act permits the requester to inspect or receive copies of a requested public record. *See* R.C. 149.43(B); *see generally State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 2, 11 (requester was awarded statutory damages when the public office failed to produce requested records on the ground that the records were available online). The fact that Ealom already has incident reports that contain information about inmate "moves" on May 31, 2021, does not change the obligation of the public office or person responsible for the requested records to provide Ealom with copies of the records that are responsive to his public-records request. Moreover, Booth does not claim that the incident reports were produced to Ealom in response to a prior public-records request, which would render the current request duplicative.

{¶ 38} Additionally, the majority asserts that Ealom should make a new public-records request if he is seeking "more specific" records than the incident reports for the flooding event. Majority opinion at ¶ 25. However, Booth does not claim that Ealom's request was ambiguous or overly broad, nor did Booth direct Ealom to provide a revised request pursuant to R.C. 149.43(B)(2). Rather, Booth's only argument for not producing the requested records is that the records are exempt from production under R.C. 5120.21(F). It is generally not the role of this court to develop a party's arguments or raise arguments on a party's behalf. As Judge Richard Posner once said, "we cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor. That's not how an adversarial system of adjudication works." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013). Hence, the majority should have analyzed Booth's argument for denying Ealom's third public-records request instead of creating its own.

{¶ 39} In this writ action, Booth asserts that Ealom's request for the inmate "moves" was an attempt to get inmate records that are exempt from public

disclosure under R.C. 5120.21(F). In *State ex rel. Mobley v. Dept. of Rehab. & Corr.*, this court held that R.C. 5120.21(F) does not exempt from public disclosure "records of inmates" that are not specifically identified in other divisions of the statute. 2022-Ohio-1765, ¶ 22-23; *accord State ex rel. Barr v. Wesson*, 2023-Ohio-3028, ¶ 24-25. Under R.C. 5120.21(A), "records of inmates" include "a record showing the name, residence, sex, age, nativity, occupation, condition and date of entrance or commitment of every inmate" as well as "the date, cause, and terms of discharge and the condition of such person at the time of leaving, a record of all transfers from one institution to another, and, if such inmate is dead, the date and cause of death." Here, Ealom's request for records pertaining to the "moves" of other inmates relates to inmate transfers. But R.C. 5120.21(A) exempts from public disclosure "record[s] of all [inmate] transfers from one institution to another," not records of *all* inmate transfers. The phrase "from one institution to another" in R.C. 5120.21(A) limits the scope of the "transfer" records that are exempt from public disclosure. *See Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948) ("the Legislature must be assumed or presumed to know the meaning of words, to have used words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statute").

{¶ 40} Ealom's public-records request is not synonymous with a request for inmate "transfers from one institution to another," R.C. 5120.21(A). "Moves" can include transfers *within* an institution as well, like transfers from one cell to another. Ealom made this distinction in his third public-records request by referring to the incident reports. In these reports, prison staff stated (1) that inmates in cell Nos. 130 through 135 would be moved to another cell block and (2) that a list was being compiled regarding potential inmate moves. *See* majority opinion at ¶ 25. Ealom's reference to the incident reports in his public-records request indicates that he was requesting records for internal transfers of inmates, not inmate transfers between institutions. Therefore, records pertaining to inmate "moves" as a result of the

flooding event do not "fall squarely within the [public-records] exemption" set forth in R.C. 5120.21(F), *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. Booth was required to produce records responsive to Ealom's third public-records request.

**{¶ 41}** For the reasons provided, I would (1) grant a limited writ ordering the production of records responsive to Ealom's public-records request for "any and all the moves" of inmates as a result of the May 31, 2021, flooding event at Trumbull Correctional Institution, (2) award statutory damages in the amount of $1,000 for Booth's failure to produce those records, and (3) award court costs. *See* R.C. 149.43(C)(2) and (C)(3). Therefore, I concur in part and dissent in part.

————————————

Anthony Ealom, pro se.

Dave Yost, Attorney General, and Andrew Gatti, Assistant Attorney General, for respondent.

————————————