[Cite as *State ex rel. McCarley v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-1559.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Willard McCarley, | : | |
| Relator, | : | |
| v. | : | No. 20AP-337 |
| [Ohio] Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on May 1, 2025

**On brief:** *Willard McCarley,* pro se.

**On brief:** *Dave Yost,* Attorney General, and *D. Chadd McKitrick,* for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Willard McCarley, has requested that this court issue a writ of mandamus ordering respondent, Ohio Department of Rehabilitation and Correction ("DRC"), to respond to relator's public records request.

{¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. This court previously adopted a magistrate's decision and issued a writ of mandamus "ordering [DRC] to produce unredacted copies of institutional records, emails, communications, and other documents as defined in relator's public records request where the reactions or retentions were based on R.C. 5120.21(F) as 'records of inmates' related to relator." *State ex rel. McCarley v. Dept.*

*of Rehab. & Corr.*, 2022-Ohio-3397, ¶ 13 (10th Dist.).  Our decision further provided that "[DRC] may continue to withhold or redact records that are not public records under other exceptions to the Public Records Act or constitute 'records of inmates' under R.C. 5120.21(F) related to individuals other than relator." *Id.*

{¶ 3}    As explained in the magistrate's decision appended hereto, the dispute over production of the records sought by relator continued after our decision, resulting in additional proceedings before the magistrate.  The complete history of the additional proceedings is set forth in the magistrate's decision, but the gravamen of the dispute is relator's assertion that DRC has failed to comply with this court's prior decision. Ultimately, the magistrate ordered DRC to provide redacted and unredacted copies of the materials it had provided to relator following this court's prior decision for in camera review, along with a privilege log identifying the basis for the redactions and a memorandum of law supporting the redactions.  Relator moved for those documents to be placed under seal and objected to certain documents that were provided for in camera review.  After a review of the parties' filings and the documents submitted for in camera review, the magistrate issued the attached decision, finding that DRC improperly redacted certain documents and recommending that this court grant relator's motion to show cause, find DRC in contempt, and impose a $1,000 sanction to be stayed so that DRC can purge the contempt by providing responsive records without the improper redactions within 30 days.  The magistrate also recommended that this court overrule relator's objection to DRC's response and deny relator's motion to place the documents produced for in camera review under seal.

{¶ 4}    DRC has filed the following objection to the magistrate's decision:

> Respondent objects to the Magistrate's recommendation to order the removal of the redaction of a third column that appears on the following pages: 262-265, 270-287, 304-316, and 318-319, which contains a Risk Assessment score for the inmates listed on that page.  R.C. 5120.115(B).

{¶ 5}    DRC submitted for in camera review redacted and unredacted copies of the 319 pages of documents that it provided to relator in response to our prior decision, along with a privilege log identifying the basis for DRC's redactions.  As explained in the magistrate's decision, DRC's privilege log and memorandum of law asserted its redactions

were justified by R.C. 149.43, 149.433, 5120.21(F), and Adm.Code 5120-9-49. With limited exception, the magistrate found that DRC failed to provide sufficient evidence to support the redactions.

{¶ 6} DRC only objects to the magistrate's decision to the extent it directs DRC to provide unredacted copies of pages 262-319 of the documents submitted to the magistrate for in camera review. Citing the statute for the first time in its objection, DRC asserts that a portion of the information contained on pages 262-319 is exempt from the Public Records Act under R.C. 5120.115(B).

{¶ 7} Under R.C. 5120.114(A), DRC is required to select a "single validated risk assessment tool for adult offenders" for use by courts, probation departments, correctional facilities, halfway houses, the adult parole authority, and the parole board. R.C. 5120.115(B) expressly provides that "[a]ll reports generated by or data collected in the risk assessment tool are confidential information and are not a public record." For purposes of R.C. 5120.115, "public record" is defined to have the same meaning as in R.C. 149.43. R.C. 5120.115(C).

{¶ 8} Pages 262-319 of the documents submitted by DRC appear to consist of a table or spreadsheet composed of six columns, respectively labeled as Inmate #, Name, Risk, Release, Recommended, and R/W.[1] The table contains information corresponding to those fields for various inmates. DRC originally redacted all the information on pages 262-319, including the labels of the columns. DRC now objects to the magistrate's order to the extent it would require DRC to release the information contained in the third column, labeled "Risk," asserting that column contains the risk assessment score for each inmate identified in the table. In support of this claim, DRC provided an affidavit from an administrative employee attesting that the "Risk" column contains data from reports generated from a single validated risk tool.

{¶ 9} DRC admits it mistakenly cited the wrong authority in the privilege log to support redaction of the risk assessment scores. DRC argues that notwithstanding that error, this court should reject the magistrate's conclusion that it failed to establish an

---

[1] It appears that due to formatting or printing issues, in some instances the fifth column ("Recommended") and/or the sixth column ("R/W") falls on a separate page than the columns that preceded it.

exception from the Public Records Act with respect to the "Risk" column of the table contained on pages 262-319.

{¶ 10} "Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23. The Supreme Court of Ohio has held that "a public-records custodian may meet his burden when the stated exemption upon which he relies is 'based on risks that are . . . apparent within the records themselves.' " *McDougald v. Greene*, 2020-Ohio-4268, ¶ 10, quoting *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 15. The court further declared that "when the applicability of [an] exemption is obvious from the face of the documents, this court will not sacrifice [the public interests protected by that exemption] simply because a party should have done a better job setting forth the obvious." *Id.* at ¶ 13.

{¶ 11} In this case, despite DRC's failure to cite the applicable statute in its privilege log, the affidavit submitted in support of DRC's objection, and the face of the documents establish that the information contained in the "Risk" column of the table contained on pages 262-319 is exempt from disclosure under the Public Records Act pursuant to R.C. 5120.115(B). Accordingly, we sustain DRC's objection and modify the magistrate's decision with respect to whether DRC established justification for redaction of information on pages 262-319. DRC may redact the information contained in the "Risk" column of the table set forth on pages 262-319. However, we agree with the magistrate's conclusion that DRC has failed to establish that the other columns of the table on pages 262-319 fall within an exception to the Public Records Act.

{¶ 12} Upon review of the magistrate's decision, an independent review of the record, and due consideration of DRC's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. For the reasons explained above, however, we sustain DRC's objection to the magistrate's decision. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent the magistrate's decision would require full, unredacted production of pages 262-319. We conclude DRC may redact the information contained in the "Risk" column of pages 262-319 as exempt from the Public Records Act

under R.C. 5120.115(B).  Accordingly, consistent with the magistrate's decision, we grant relator's amended motion to show cause.  We find DRC to be in contempt and impose a sanction of $1,000, but we stay that sanction to allow DRC an opportunity to purge the contempt by providing the responsive records without unsupported redactions no later than 30 days after this order.  We also overrule relator's June 10, 2024 objection and deny relator's November 8, 2023 motion to place the documents submitted for in camera review under seal.

*Respondent's objection to magistrate's decision sustained;*
*magistrate's decision modified and adopted;*
*motion to show cause granted;*
*relator's objection to respondent's evidence and amended memorandum of law overruled;*
*relator's motion to place documents under seal denied.*

LELAND and DINGUS, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Willard McCarley, | : | |
| Relator, | : | |
| v. | : | No. 20AP-337 |
| Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 17, 2025

*Willard McCarley,* pro se.

*Dave Yost,* Attorney General, and *D. Chadd McKitrick,* for respondent.

IN MANDAMUS
ON MOTIONS

{¶ 13} Relator, Willard McCarley, an inmate in the custody of respondent Ohio Department of Rehabilitation and Correction ("DRC"), sought a writ of mandamus in this action ordering DRC to respond to his public records request. In a decision rendered on September 27, 2022, this court issued a decision granting a writ of mandamus that ordered DRC "to produce unredacted copies of institutional records, emails, communications, and other documents as defined in relator's public records request where the redactions or retentions were based on R.C. 5120.21(F) as 'records of inmates' related to relator." *State ex rel. McCarley v. Dept. of Rehab. & Corr.,* 10th Dist. No. 20AP-

337, 2022-Ohio-3397, ¶ 13. This court further stated that DRC "may continue to withhold or redact records that are not public records under other exceptions to the Public Records Act or constitute 'records of inmates' under R.C. 5120.21(F) related to individuals other than relator." *Id.* Following that decision, considerable controversy concerning compliance with the writ arose.

## I. Findings of Fact

{¶ 14} 1. On December 21, 2022, relator filed a motion to show cause why DRC should not be held in contempt with damages ordered. In the motion, relator alleged DRC had ignored the command of the writ.

{¶ 15} 2. On March 15, 2023, DRC was ordered to show cause in writing within 14 days why it should not be found to be in violation of this court's September 27, 2022 decision granting a writ of mandamus.

{¶ 16} 3. On March 29, 2023, DRC filed a response to the show cause order accompanied by the affidavit of Kasey Plank, who is employed by DRC as the Warden's Administrative Assistant at the Marion Correctional Institution. In the affidavit, Plank stated that on January 4, 2023, in response to an email from DRC Legal Services, Plank printed an attachment, which Plank attempted to deliver to relator on the same day. According to Plank, relator refused the documents at the time of delivery.

{¶ 17} 4. On April 27, 2023, a magistrate's order was issued in which the magistrate found that DRC had satisfied its obligations under the show cause order.

{¶ 18} 5. On August 14, 2023, relator filed a new motion to show cause. Relator alleged in his motion that he contacted the warden's assistant seeking the records that he originally refused to pay for. Relator alleged that he was informed those documents were shredded and that DRC was ignoring further communication from relator.

{¶ 19} 6. DRC filed a memorandum contra on August 28, 2023, in which counsel for DRC stated that the records at issue would be produced by mail to relator without the prepayment of copying fees. DRC asserted that it was again in compliance with the September 27, 2022 writ.

{¶ 20} 7. On September 12, 2023, relator filed an amended motion to show cause why DRC should not be held in contempt. Relator stated that "[o]n or about August 30, 2023 Relator received a letter dated August 28, 2023 from counsel [for DRC] along with

319 pages of heavily redacted documents." (Relator's Sept. 12, 2023 Mot. at 3.) Relator asserts that these documents "are the same originally REDACTED documents [DRC] provided prior to the Courts ruling on September 27, 2022." (Sic passim.) (Relator's Sept. 12, 2023 Mot. at 4.) Relator therefore alleges that DRC "has ignored the writ and should be held in contempt with $1,000 in damages ordered since [DRC] continues some form of gamesmanship in this case." (Relator's Sept. 12, 2023 Mot. at 4.)

{¶ 21} 8. DRC filed a response to relator's amended motion to show cause on October 9, 2023.

{¶ 22} 9. In an October 17, 2023 magistrate's order, DRC was directed to provide for in camera review the following:

> (1) both an unredacted and redacted copy of the materials provided to relator in response to this court's writ;
>
> (2) a redaction log identifying each redaction and providing the specific basis for the claim that each redaction is in compliance with this court's September 27, 2022 decision; and
>
> (3) a memorandum of law in support of the asserted bases for the redactions.

(Oct. 17, 2023 Mag.'s Order at 4.)

{¶ 23} 10. On November 8, 2023, relator filed a motion requesting that the court place the documents produced for in camera review under seal for appellate review.

{¶ 24} 11. On November 20, 2023, DRC electronically submitted materials in response to the October 17, 2023 magistrate's order. Included in the submission was (1) a copy of redacted materials presented by Plank to relator on January 4, 2023, (2) a copy of the same materials presented by Plank on January 4, 2023 in unredacted form, (3) a privilege log for the redacted materials presented to relator by Plank, and (4) an affidavit of D. Chadd McKitrick, counsel for DRC.

{¶ 25} 12. In the affidavit, McKitrick stated that his office "erroneously mailed to Relator the wrong set of documents that contained the original redactions, and not the unredacted set that Ms. Plank attempted to produce to Relator earlier this year." (McKitrick's Aff. at 2.) McKitrick stated that he learned of his error in response to the October 17, 2023 Magistrate's Order. McKitrick stated that "[i]n order to repair this error, I have mailed to Relator on November 17, 2023, the correct set of documents Ms. Plank

attempted to produce to Relator, containing the information relating to Relator in its unredacted form." *Id.*

{¶ 26} 13. On December 15, 2023, DRC filed evidence including (1) a printed copy of the materials presented by Plank to relator on January 4, 2023, (2) a printed copy of the same materials presented by Plank on January 4, 2023 in unredacted form, and (3) a memorandum of law.

{¶ 27} 14. On May 9, 2024, the magistrate ordered DRC to file with the clerk a redaction log and memorandum of law, in addition to any amendments to such documents, within 14 days.

{¶ 28} 15. On May 23, 2024, DRC filed an amended privilege log and amended memorandum of law.

{¶ 29} 16. On June 10, 2024, relator filed an objection against DRC's May 23, 2024 evidence and amended memorandum of law.

{¶ 30} 17. On June 17, 2024, DRC filed a memorandum in response to relator's June 10, 2024 objections.

{¶ 31} 18. On July 5, 2024, relator filed a "response against respondents memorandum."

## II. Discussion and Conclusions of Law

{¶ 32} Relator has filed an amended motion to show cause why DRC should not be held in contempt of this court's writ. In response, DRC argues it has complied with the writ because it provided records to relator without the prior redactions based on "records of inmates" related to relator.

## A. Ohio's Public Records Act

{¶ 33} Ohio's Public Records Act, which is codified at R.C. 149.43, "reflects [Ohio's] policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. *See White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 420 (1996) ("[P]ublic scrutiny is necessary to enable the ordinary citizen to evaluate the workings of his or her government and to hold government accountable. If the public can understand the rationale behind its

government's decisions, it can challenge or criticize those decisions as it finds necessary; the entire process thus allows for greater integrity and prevents important decisions from being made behind closed doors."). The Public Records Act requires that "requestors have full access to public records unless the requested records fall within one of the exceptions specifically enumerated in the act." *State ex rel. Fair Housing Opportunities of Northwest Ohio v. Ohio Fair Plan*, 10th Dist. No. 20AP-351, 2022-Ohio-385, ¶ 7, citing *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 170 (2000).

{¶ 34} A "public record" includes "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to [R.C.] 3313.533." R.C. 149.43(A)(1). Records, for purposes of the Public Records Act, are defined as "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). *See State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 18. R.C. 149.43(A)(1) contains an extensive list of materials that are expressly exempted from being public records.

{¶ 35} The Public Records Act "requires a public office to make copies of public records available to any person on request and within a reasonable period of time." *State ex rel. McDougald v. Greene* (hereinafter "*McDougald I*"), 161 Ohio St.3d 130, 2020-Ohio-3686, ¶ 9, citing R.C. 149.43(B)(1). "If a request is denied 'in part or in whole,' the records custodian must provide the requester with an explanation." *State ex rel. Culgan v. Jefferson Cty. Clerk of Courts*, 2024-Ohio-5699, ¶ 14, quoting R.C. 149.43(B)(3). "A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction." R.C. 149.43(B)(1).

{¶ 36} The Public Records Act is construed liberally in favor of broad access with any doubts resolved in favor of disclosure. *State ex rel. Mobley v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 39, 2022-Ohio-1765, ¶ 7. "Exceptions to disclosure * * * are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, ¶ 10. "A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *Id.* "[W]hen the applicability of a public-records exemption is not readily apparent from the content of the record, the records custodian must provide 'specific factual support that goes beyond mere conclusory statements in an affidavit to show that the record sought falls squarely within the prescribed exception.' " *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 172 Ohio St.3d 438, 2023-Ohio-1177, ¶ 34, quoting *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 50. However, "when the applicability of the exemption is obvious from the face of the documents, this court will not sacrifice those interests simply because a party should have done a better job setting forth the obvious." *McDougald v. Greene* (hereinafter "*McDougald II*"), 162 Ohio St.3d 250, 2020-Ohio-4268, ¶ 13.

## B. Analysis

{¶ 37} As outlined in DRC's amended privilege log and amended memorandum of law, DRC argues that the redactions to the documents provided to relator are supported by several statutory provisions, including: R.C. 149.43, 149.433, and 5120.21. DRC also cites Ohio Adm.Code 5120-9-49 in support of several redactions. As the bulk of the redactions are based, at least in part, on provisions of R.C. 5120.21, those redactions are addressed first.

*1. Redactions of Inmate Records Under R.C. 5120.21*

{¶ 38} DRC claims exemptions to disclosure under the provisions of R.C. 5120.21(C) and 5120.21(F). R.C. 5120.21 generally pertains to records that must be maintained by DRC and the circumstances under which disclosure of such records is permitted or prohibited. *McCarley*, 2022-Ohio-3397, at ¶ 7. R.C. 5120.21(F) provides that "[e]xcept as otherwise provided in division (C) of this section, records of inmates

committed to [DRC] as well as records of persons under the supervision of the adult parole authority shall not be considered public records as defined in section 149.43 of the Revised Code." The Supreme Court of Ohio has recently provided an overview of R.C. 5120.21 and the interplay of some its various subsections:

> R.C. 5120.21(A) requires DRC to "keep in its office * * * a record showing the name, residence, sex, age, nativity, occupation, condition, and date of entrance or commitment of every inmate in the several institutions [that DRC governs]." This record is accessible only to DRC employees. *Id.*
>
> R.C. 5120.21(B) requires the managing officer of an institution to make "a special report" to DRC within 24 hours of "an accident or injury or peculiar death of an inmate."
>
> R.C. 5120.21(C) covers medical records that a DRC institution must compile and maintain for every inmate. This section also specifies who may obtain a copy of an inmate's medical records.
>
> Finally, R.C. 5120.21(D) requires DRC and its institutions to keep seven categories of confidential records, five of which would likely contain specific information about inmates. *See* R.C. 5120.21(D)(3) (statements by inmate informants); R.C. 5120.21(D)(4) (records from the department of youth services pertaining to children in its custody); R.C. 5120.21(D)(5) (information from crime victims); R.C. 5120.21(D)(6) (information pertaining to groups posing a security threat); R.C. 5120.21(D)(7) (recorded inmate telephone conversations involving nonprivileged communications). Though these records are confidential, DRC may consent to their release. *See* R.C. 5120.21(D).
>
> In the context of the entire statute, the term "records of inmates" in R.C. 5120.21(F) logically refers to the records mentioned elsewhere in R.C. 5120.21, clarifying that such records are not public records.

*Mobley,* 2022-Ohio-1765, at ¶ 18-22.

{¶ 39} As acknowledged by DRC in its amended memorandum of law, the majority of redactions performed on the documents and noted in the privilege log were based on R.C. 5120.21(F). The Supreme Court of Ohio addressed similar claims by DRC regarding R.C. 5120.21(F) in *Mobley.* In that case, Mobley, an inmate in DRC custody, requested parts of his "inmate master file" related to the charges levied and decisions made in disciplinary proceedings against him. *Mobley* at ¶ 2. Mobley also requested all kites

involving him.[2] Asserting that DRC failed to provide him with any of the requested records, Mobley sought a writ of mandamus before the Supreme Court of Ohio. DRC responded that the records sought by Mobley were exempt from public-records disclosure as "records of inmates" under R.C. 5120.21(F). DRC did not assert that any other exception to disclosure applied.

{¶ 40} The court declined to apply the R.C. 5120.21(F) exemption to records not otherwise identified in R.C. 5120.21. Noting that courts reviewing a statute " 'cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment,' " the court stated that "R.C. 5120.21(F) is just one part of R.C. 5120.21." *Mobley*, 2022-Ohio-1765, at ¶ 17, quoting *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997). The court found that "[i]n the context of the entire statute," the term 'records of inmates' in R.C. 5120.21(F) logically refers to the records mentioned elsewhere in R.C. 5120.21, clarifying that such records are not public records," with the stated exception of an inmate's medical records requested under R.C. 5120.21(C)(2). *Mobley* at ¶ 22. Thus, "R.C. 5120.21(F) clarifies that none of those records are public records, even though some of them are not deemed confidential, *see* R.C. 5120.21(B), and others may be released with DRC's consent, *see* R.C. 5120.21(D)." *Id*. Observing that DRC did not contend that "the records requested by Mobley fall under one of the categories of 'records of inmates' identified in R.C. 5120.21," or otherwise contend that "any other exception to disclosure applies," the court held that "DRC must disclose the records that Mobley seeks because they are public records to which no exception applies." *Id*. at ¶ 23.

{¶ 41} In this case, DRC argues that R.C. 5120.21(F) supports redaction because the information in question "pertain[s] to the records and medical information of other inmates who are not Relator." (DRC's May 23, 2024 Am. Memo at 2.) DRC states that this information "includes medical and/or health information that is subject to federal HIPAA laws against disclosure" and "is also related to information that pertains to inmate programming, visitation and visitation compliance, housing location, ORAS risk

---

[2] The kite system is utilized within Ohio's prisons as a two-way means of communication between all levels of staff and inmates. *See McDougald I*, 2020-Ohio-3686, at ¶ 16. *See also State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. No. 16CA52, 2017-Ohio-1472, ¶ 15 (stating that a kite is a communication "written by an inmate to a member of the prison staff and is 'a means for inmates to contact staff members inside [an] institution.' "

assessment scores, and security level information." *Id.* at 2-3. As in *Mobley*, DRC does not specifically argue that certain records fall into one of the categories of records of inmates identified in R.C. 5120.21. Even where DRC specifically identifies another section of R.C. 5120.21, namely R.C. 5120.21(C), as a category of records of inmates, DRC fails to support with sufficient evidence that the records in question actually fit within that exception.

*a. Redactions Under R.C. 5120.21(F) — Pages 44, 45, 93, 113, 165–179, 184, 185, 195–198, and 204–207*

{¶ 42} With regard to redactions on pages 44, 45, 93, 113, 184, 185, 195 through 198, and 204 through 207, DRC states in the privilege log that R.C. 5120.21(F) supports redaction because of "offender-specific information." (DRC's Am. Privilege Log at 2-3, 6.) For pages 165 through 179, DRC states that R.C. 5120.21(F) applies because the information pertains to "inmates with no visits during the specified time period." *Id.* at 6. DRC fails to explain how these records fall under one of the categories of "records of inmates" identified in R.C. 5120.21. Nor does DRC contend that another exception applies. In the absence of any other information, and consistent with *Mobley*, DRC must disclose these records. *See Sultaana*, 2023-Ohio-1177, at ¶ 32 (finding that "[b]ecause the incident and conduct reports at issue in this case are not records that R.C. 5120.21 declares exempt from the definition of 'public records,' the prison cannot invoke that statute to justify its redaction of the inmate names and inmate numbers from those documents"); *State ex rel. Reese v. Ohio Dept. of Rehab. & Corr. Legal Dept.*, 168 Ohio St.3d 647, 2022-Ohio-2105, ¶ 22 (finding relator entitled to writ of mandamus ordering DRC to disclose requested records where DRC did not argue that the records were documents covered by R.C. 5120.21 and did not identify any statutory exemption that categorically excepts the documents from public-records disclosure).

*b. Redactions Under R.C. 5120.21(F) — Pages 30, 31, 47, 48, 63, 64, 79, 80, 95, and 96*

{¶ 43} Next, with regard to redactions on pages 30, 31, 47, 48, 63, 64, 79, 80, 95, and 96, DRC states that R.C. 5120.21(F) applies because of "offender-specific information, reveals compliance with visit, medical need, programming, etc. criteria." (DRC's Am. Privilege Log at 1-3.) Again, DRC does not explain how these records fall under one of the

categories of "records of inmates" identified in R.C. 5120.21. As a result, these records are also subject to disclosure.

{¶ 44} Furthermore, although DRC mentions "medical need" as a reason for redaction under R.C. 5120.21(F), DRC does not contend that these are "medical records" as defined under R.C. 5120.21(C). For purposes of R.C. 5120.21, "medical record" is defined as "any document or combination of documents that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." R.C. 5120.21(C)(1).

{¶ 45} Similar to the requirements of R.C. 5120.21(C), "medical records" are defined under the Public Records Act to include "any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." R.C. 143.43(A)(3). Thus, the definition has multiple requirements, all of which must be met for a document to be considered a medical record under the statute: (1) it must pertain to the medical history, diagnosis, prognosis, or medical condition of a patient; and (2) it must have been generated *and* maintained in the process of medical treatment. *See State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158 (1997) (agreeing that in order to be exempted from disclosure as medical records under the Public Records Act, "the records sought must meet the conjunctive requirements of the statute"). For example, even where the records involve diagnosis and treatment, if "they are not 'maintained in the process of medical treatment,' " then they are "not exempt from disclosure." *Id.*

{¶ 46} DRC does not provide evidence to support or argue that these records were generated and maintained in the process of medical treatment. Nor does a review of the records demonstrate that they appear on their face to meet this definition. Even considering R.C. 5120.21(C), DRC has failed to demonstrate that these records are properly redacted under R.C. 5120.21. *See Strothers* at 158.

{¶ 47} Furthermore, though DRC makes a passing reference in its amended

memorandum of law to HIPPA,[3] it does not claim in the amended privilege log that HIPPA applies to the records on the above-listed pages, or, for that matter, to any other records. Nor does a review of the records reveal how these records implicate a patient's health information protected under HIPPA privacy rules. Moreover, the Supreme Court of Ohio has previously held that even if records contain protected health information, "they would still be subject to disclosure pursuant to the 'required by law' exception to the HIPAA privacy rule because the Ohio Public Records Law requires disclosure of these reports, and HIPAA does not supersede state disclosure requirements." *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, ¶ 30. Thus, in the absence of any further explanation from DRC, the magistrate cannot find that HIPPA precludes the disclosure of these records.

*c. Redactions Under R.C. 5120.21(C) and (F) and R.C. 149.43(A)(1)(a) — Pages 143–162 and 234–251*

{¶ 48} Next, DRC asserts the redacted portions of pages 143 through 162 and 234 through 251 are exempt from disclosure as medical records under R.C. 5120.21(C) and (F), in addition to R.C. 149.43(A)(1)(a). With regard to pages 143 through 162, DRC offers the following explanation of why the redacted information is a medical record not subject to disclosure as a public record: "special needs roster of inmates; lists medical need of inmates for low bunk, range, walker, etc." (DRC's Am. Privilege Log at 4-5.) With regard to pages 234 through 251, DRC offers the following explanation: "special needs roster of inmates; lists medical need of inmates for low bunk or range." *Id.* at 7-8. In its amended memorandum, DRC states that "[m]any redactions performed on the documents produced were in accordance with this provision [in R.C. 149.43(A)(1)(a)] that mandates medical records and other medical and health information are not considered public records." (DRC's May 23, 2024 Am. Memo at 1-2.)

---

[3] HIPPA refers to the federal Health Insurance Portability and Accountability Act of 1996, which "prevents healthcare providers from disclosing health information except in certain specific circumstances." *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, ¶ 9, citing 45 C.F.R. 164.502. *See, e.g., Menorah Park Ctr. for Senior Living v. Rolston*, 164 Ohio St.3d 400, 2020-Ohio-6658, ¶ 19-28 (providing an overview of HIPPA privacy rules and the interaction between HIPPA and state law); *OhioHealth Corp. v. Ryan*, 10th Dist. No. 10AP-937, 2012-Ohio-60, ¶ 14, quoting *Stigall v. Univ. of Ky. Hosp.*, E.D.Ky. No. 5:09-CV-00224-KSF, 2009 U.S. Dist. LEXIS 103757 (Nov. 6, 2009) ("In general, HIPAA governs the confidentiality of medical records and regulates how 'covered entities' can use or disclose 'individually identifiable health (medical) information (in whatever form) concerning an individual.' ").

{¶ 49} Again, DRC does not provide evidence or argue that these records were generated and maintained in the process of medical treatment. Nor does a review of the records demonstrate that they appear on their face to meet this definition. As a result, DRC has failed to demonstrate that the redactions on these pages are supported by R.C. 5120.21 and 149.43(A)(1)(a). *See Strothers* at 158.

*d. Redaction of Other Records Under R.C. 5120.21(F) — Pages 262–319*

{¶ 50} With regard to pages 262 through 319, DRC argues that the records are exempt from disclosure under R.C. 5120.21(F) because the records contain a "list of offenders awaiting ORAS programming" and "also display[] security/need level." (DRC's Am. Privilege Log at 9-13.) As with other groups of records, DRC fails to explain how these records fall under one of the categories of "records of inmates" identified in R.C. 5120.21. DRC also does not contend that another exception applies. Therefore, consistent with *Mobley*, R.C. 5120.21(F) does not operate to exempt these records from disclosure as public records.

{¶ 51} DRC also argues the records are exempt as security records under R.C. 149.433(A)(1) and Ohio Adm.Code 5120-9-49(C)(7). These arguments will be addressed below in the discussion of claimed exemptions related to security records.

*2. Redaction of Security Records Under R.C. 149.433(A)(1)*

{¶ 52} DRC argues that certain records are exempt from disclosure because they are security records under R.C. 149.433(A)(1) or Ohio Adm.Code 5120-9-49(C)(7). "Security records," are defined under R.C. 149.433 to include any of the following:

> (1) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage;
>
> (2) Any record assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism, including any of the following:
>
> (a) Those portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel;

(b) Specific intelligence information and specific investigative records shared by federal and international law enforcement agencies with state and local law enforcement and public safety agencies;

(c) National security records classified under federal executive order and not subject to public disclosure under federal law that are shared by federal agencies, and other records related to national security briefings to assist state and local government with domestic preparedness for acts of terrorism.

(3) An emergency management plan adopted pursuant to section 5502.262 of the Revised Code.

R.C. 149.433(A). Except as otherwise specifically provided, "a record kept by a public office that is a security record is not a public record under section 149.43 of the Revised Code and is not subject to mandatory release or disclosure under that section." R.C. 149.433(B)(1). *See McDougald II*, 2020-Ohio-4268, at ¶ 9. Ohio Adm.Code 5120-9-49(C)(7) provides that a "security record" is "any record that contains information directly used for protecting or maintaining the security of the department against attack, interference, sabotage, or to prevent, mitigate, or respond to acts of terrorism."

*a. Redaction of Prison Shift Reports Under Exemption for Security Records — Pages 116, 117, and 119–121*

{¶ 53} DRC argues that the prison shift reports on pages 116, 117, and 119 through 121 are exempt from disclosure as security records under R.C. 149.433(A)(1) and Ohio Adm.Code 5120-9-49(C)(7). In *McDougald II*, the Supreme Court of Ohio found that shift-assignment duty rosters qualified as security records for purposes of the Public Records Act "because they contain information 'directly used for protecting or maintaining the security' of the prison." *Id.*, quoting R.C. 149.433(A)(1). The court found that the applicability of the exemption was "obvious from the face of the documents." *Id.* at ¶ 13.

{¶ 54} Here, as in *McDougald II*, the shift reports contain information related to the identity and location of guards in the prison. Although DRC does not offer a sworn statement regarding the security application of the shift reports, such an implication is unavoidable and obvious from the contents of the documents themselves. Thus, consistent with *McDougald II*, DRC has satisfied its burden of demonstrating the shift

reports contained within the responsive records were appropriately redacted as security records pursuant to R.C. 149.433(A)(1). *Compare Sultaana*, 2023-Ohio-1177, at ¶ 34.

*b. Redaction of Other Records Under R.C. 149.433(A)(1) and Ohio Adm.Code 5120-9-49(C)(7) — Pages 262–319*

{¶ 55} As previously mentioned, with regard to pages 262 through 319, DRC argues that the records are exempt from disclosure under R.C. 149.433(A)(1) and Ohio Adm.Code 5120-9-49(C)(7) because the records contain a "list of offenders awaiting ORAS programming" and "also display[] security/need level." (DRC's Am. Privilege Log at 9-13.) Unlike the shift reports, it is not readily apparent from the face of the records how they qualify as security records. These records do not appear to contain "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1). Nor do they appear to be "assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism." R.C. 149.433(A)(2). They also do not appear to be "[a]n emergency management plan adopted pursuant to section 5502.262 of the Revised Code." R.C. 149.433(A)(3). Nor does Ohio Adm.Code 5120-9-49(C)(7) make clear how these records are security records.

{¶ 56} DRC fails to demonstrate how these records specifically qualify as one of the types of defined security records under R.C. 149.433(A). Far from "specific factual support," DRC does not even offer "mere conclusory statements in an affidavit" to assist the court in determining how the record sought "falls squarely within the prescribed exception." *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 50. *See McDougald*, 2020-Ohio-4268, at ¶ 10. Without more evidentiary support from DRC, the magistrate cannot find the security records exemption applies.

*3. Personal Information — Page 13*

{¶ 57} DRC argues that the redaction on page 13 is proper under Ohio Adm.Code 5120-9-49(C)(5)(a)(iv) because it is an individual's personal telephone number. Ohio Adm.Code 5120-9-49(C)(5) provides that "[r]esidential and familial information of parole officers and correctional employee" are not public records. Ohio Adm.Code 5120-9-49(C)(5)(a) provides that "residential and familial information" includes "any

information that discloses any of the following about a correctional employee or a parole officer * * * (iv) Residential and emergency telephone numbers.”

{¶ 58} Additionally, under R.C. 149.43(A)(1)(p), a public record does not include “[d]esignated public service worker residential and familial information.” A “designated public service worker” includes among other listed categories of employees a “correctional employee.” R.C. 149.43(A)(7). “Designated public service worker residential and familial information” is defined as “any information that discloses any of the following about a designated public service worker,” including “the residential telephone number” of a designated public service worker. R.C. 149.43(A)(8). The magistrate finds that the redaction on page 13 is appropriate under the above authorities.

## C. Conclusion

{¶ 59} Under the terms of this court’s decision granting the writ, DRC was ordered to “produce unredacted copies of institutional records, emails, communications, and other documents as defined in relator’s public records request where the redactions or retentions were based on R.C. 5120.21(F) as ‘records of inmates’ related to relator.” *McCarley* at ¶ 13. This court specifically provided that DRC “may continue to withhold or redact records that are not public records under other exceptions to the Public Records Act or constitute ‘records of inmates’ under R.C. 5120.21(F) related to individuals other than relator.” *Id.*

{¶ 60} As set forth above, some of the redactions made by DRC are not supported by sufficient evidence to demonstrate that they are not public records under exceptions to the Public Records Act or constitute “records of inmates” not subject to disclosure under R.C. 5120.21. Notably, while DRC has provided arguments in support of redaction in its amended memorandum of law and amended privilege log, DRC has not provided specific evidentiary support, whether in the form of an affidavit or otherwise, to demonstrate that the listed exceptions apply to permit redaction of the records DRC produced. *See Sultaana*, 2023-Ohio-1177, at ¶ 34; *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 50. The affidavits of Plank and McKitrick do not address the basis for the redactions at all. Therefore, consistent with the above reasoning, the magistrate finds DRC has improperly redacted the records as identified in DRC’s privilege log and the materials provided to this court on the following pages: 30, 31, 44, 45, 47, 48, 63, 64, 79, 80, 93, 95,

96, 113, 143–162, 165–179, 184, 185, 195–198, 204–207, 234–251, and 262–319.

{¶ 61} The magistrate finds DRC has, in part, failed to meet its obligations under Ohio's Public Records Act and the writ of mandamus issued by this court. Accordingly, it is the decision and recommendation of the magistrate that this court should grant relator's amended motion to show cause as consistent with this decision, find DRC in contempt, and impose a sanction of $1,000, to be stayed in order to allow DRC an opportunity to purge the contempt by providing the responsive records without the above-listed unsupported redactions not later than 30 days after this court's order. The magistrate further recommends overruling relator's June 10, 2024 objection and denying relator's November 8, 2023 motion to place the documents produced for in camera review under seal for appellate review as unnecessary at this time.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.